1          UNITED STATES DISTRICT COURT

2           DISTRICT OF MINNESOTA

3    ------------------------------------------------------------
                                    )
4    United States of America,      )  File No. 21-CR-108
                                    )  (1,2,3,4) (PAM/TNL)
5           Plaintiff,              )
                                    )  Via Zoom
6    vs.                            )  Videoconferencing
                                    )
7    Derek Michael Chauvin (1),     )  Minneapolis, Minnesota
     Tou Thao (2),                  )  Courtroom 15
8    J Alexander Kueng (3),         )  September 14, 2021
     Thomas Kiernan Lane (4),       )  10:00 a.m.
9                                   )
            Defendants.             )
10                                  )
                                    )
11                                  )
     ------------------------------------------------------------

12

13

           BEFORE THE HONORABLE TONY N. LEUNG
14
        UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
15
           (ARRAIGNMENT AND MOTIONS HEARING)
16

17

18

19

20

21

22          MARIA V. WEINBECK, RMR-FCRR
               Official Court Reporter
23          United States District Court
               1005 U.S. Courthouse
24           300 South Fourth Street
            Minneapolis, Minnesota 55415
25

```
 1                            APPEARANCES

 2      For the Plaintiff:        Assistant United States Attorney
                                  MANDA M. SERTICH
 3                                300 South Fourth Street
                                  Suite 600
 4                                Minneapolis, Minnesota 55415

 5                                Department of Justice
                                  SAMANTHA TREPEL
 6                                150 M St. NE
                                  Washington, DC   20530
 7
        For Defendant (1)         Halberg Criminal Defense
 8      Derek Chauvin:            ERIC J. NELSON
                                  7900 Xerxes Avenue South
 9                                Suite 1700
                                  Bloomington, MN 55431
10
        For Defendant (2)         Robert M. Paule, PA
11      Tou Thao:                 ROBERT M. PAULE
                                  NATALIE PAULE
12                                920 Second Avenue South
                                  Suite 975
13                                Minneapolis, MN  55402

14      For Defendant (3)         Attorney at Law
        J Alexander Kueng:        THOMAS C. PLUNKETT
15                                101 E. 5th St, Suite 1500
                                  Saint Paul, MN  55101
16
        For Defendant (4)         Earl Gray Defense
17      Thomas Kiernan Lane:      EARL P. GRAY
                                  332 Minnesota Street
18                                Suite W 1610
                                  Saint Paul, MN  55101
19

20

21

22

23

24
             Proceedings reported by court reporter; transcript
25      produced by computer.
```

1          **P R O C E E D I N G S**

2                **IN OPEN COURT**

3                **(10:02 a.m.)**

4          THE COURT:  Thank you, everyone.  If you're

5     standing, please be seated.

6          Okay, lawyers, just to give you an update.  I'm

7     going to do the motions separately for each of the

8     individual defendants.  It's just going to be easier for me

9     to keep track of notes and so forth, and I know that's going

10    to test your patience as you're waiting in line, but I think

11    it will be much easier for the Court to keep track of the

12    approximately 40 motions that are before the Court.

13         We will hear at least one of the motions together

14    for oral arguments, and they'll be with the severance

15    motion.  So I think it's time to get going formally.

16         This is the United States District Court for the

17    District of Minnesota.  And the case before the bench today

18    for arraignment and for oral arguments on motions is

19    captioned as follows:

20         The United States of America versus Derek Michael

21    Chauvin, who is Defendant Number 1 in case number 21-CR-108;

22    and Mr. Tou Thao, who is Defendant Number 2; J. Alexander

23    Kueng, who is Defendant Number 3; and Thomas Kiernan Lane,

24    who is Defendant Number 4.  And we are here again for

25    arraignment and oral arguments.

1           We are appearing, of course, by video telephone

2     conference, and I just want to go over some things with

3     everybody, but before we do that, I want to identify the

4     parties who are here and their respective counsel starting

5     with the government.

6           MS. SERTICH:  Good morning, Your Honor.

7     Assistant United States Attorney Manda Sertich on behalf of

8     the government.  I'm joined by Samantha Trepel from the

9     Department of Justice Civil Rights Division.

10          THE COURT:  Good morning.  And, Ms. Trepel, could

11    you say something so we could at least test the audio.  I

12    believe all the audio has been tested but just in case.

13          MS. TREPEL:  Good morning, Your Honor.

14          THE COURT:  Okay.  Thank you.  And for

15    Mr. Chauvin, please.

16          MR. NELSON:  Good morning, Your Honor.  Eric

17    Nelson appearing on behalf of Mr. Chauvin.  Mr. Chauvin

18    appears in custody via Zoom videoconferencing.

19          THE COURT:  Very well.  Mr. Chauvin, can you hear

20    us?  Is he on mute?

21          Mr. Chauvin, could you greet us so we can make

22    sure your audio is working?

23          DEFENDANT CHAUVIN:  Good morning, Your Honor.

24    Can you hear me now?

25          THE COURT:  Yes, we can.  Okay.  And, thank you,

 1    Mr. Nelson, and good morning, Mr. Chauvin.

 2               And for Mr. Thao?

 3               MR. PAULE:  Good morning, Your Honor.  Robert

 4    Paule, appearing along with Natalie Paule, same spelling, on

 5    behalf of Mr. Thao, who is present via Zoom.  Good morning,

 6    everyone.

 7               THE COURT:  Good morning, Mr. Paule, and

 8    Ms. Paule, and also Mr. Thao.  I thought I saw you earlier

 9    here.  There you are.  Okay.  Could you say something, I

10    suppose could you just say something?  State your name, so

11    we can just make sure your audio is working too.

12               DEFENDANT THAO:  Good morning, sir.  My name is

13    Tou Thao.

14               THE COURT:  Is there a way you can get a little

15    closer to the screen so that you can appear?  I think if you

16    come closer together, you'll be able to see.  Okay.  Thank

17    you.

18               And let me double check, could you hear the

19    government and the others that have spoken so far, Mr. Paule

20    and Mr. Thao?

21               MR. PAULE:  Yes, Your Honor.

22               THE COURT:  And Ms. Paule?

23               MS. PAULE:  Good morning, Your Honor.  I was able

24    to hear everything.

25               THE COURT:  Okay.  And let me just circle back to

1    Mr. Nelson.  Mr. Nelson and Mr. Chauvin, can you guys hear

2    everybody that's spoken so far?  Mr. Nelson?

3              MR. NELSON:  Yes, Your Honor.

4              DEFENDANT CHAUVIN:  Yes, Your Honor.

5              THE COURT:  Very well.

6              And, next, Mr. Plunkett, good morning.  Could you

7    identify yourself for the record?

8              MR. PLUNKETT:  Good morning, Your Honor.  Thomas

9    Plunkett on behalf of Mr. Kueng.  Mr. Kueng is present with

10   me.  We've been able to hear the Court and everyone that's

11   spoken so far.

12             THE COURT:  Okay.  And, Mr. Kueng, maybe you could

13   just say something so I can at least tell if we can hear

14   you.

15             DEFENDANT KUENG:  Good morning, Your Honor.  Mr.

16   Kueng here before the Court.

17             THE COURT:  Thank you.  Okay.

18             And, Mr. Gray, please.

19             MR. GRAY:  Good morning, Your Honor.  Earl Gray

20   representing Thomas Lane.  Mr. Lane is sitting to my left

21   here.  Can you see him, Your Honor?

22             THE COURT:  Yes, I can.

23             MR. GRAY:  Do you want him to say something?

24             THE COURT:  Yes that would be great.

25             DEFENDANT LANE:  Good morning, Your Honor.  I've

1    been able to hear everything this far.

2              THE COURT:  Okay.  You anticipated my question.

3    Thank you.

4              Okay.  Let me circle back again then to the

5    government.  Ms. Sertich, Ms. Trepel, could you hear all the

6    defense and defendants?

7              MS. SERTICH:  I could, Your Honor, thank you.

8              MS. TREPEL:  Yes, Your Honor.  No trouble hearing

9    anyone.

10             THE COURT:  Okay.  As a reminder, members of the

11   media and those members of the public here with us today,

12   any recording of a proceeding held by video or telephone

13   conference or video conference, including screen shots or

14   other visual or audio copying of a hearing is strictly

15   prohibited.  Violation of these prohibitions may result in

16   sanctions.

17             Due to the exigencies of the global pandemic, we

18   are appearing virtually today by telephone teleconferencing

19   technology.  Defendants Derek Michael Chauvin, Tou Thao, J

20   Alexander Kueng and Thomas Kiernan Lane are all appearing

21   remotely today.  Through counsel, each defendant has filed a

22   notice of consent for video conferencing for the purposes of

23   conducting this arraignment and motions hearing.

24             I will skip the ECF numbers, but I believe those

25   will be found in the record.  At the same time, even though

1    we have that, obviously, you can change your mind, so I do

2    want to double check for purposes of this morning that

3    everyone is okay to proceed by video conference.

4              Beginning with you, Mr. Chauvin, are you willing

5    to proceed by video conferencing today for your arraignment

6    and motions hearing?

7              DEFENDANT CHAUVIN:  Yes, Your Honor, I am.

8              THE COURT:  Do you know you have the right to have

9    an in-person arraignment and motions hearing?

10             DEFENDANT CHAUVIN:  Yes, Your Honor.

11             THE COURT:  Have you had a chance to speak to

12   Mr. Nelson about that?

13             DEFENDANT CHAUVIN:  I have, Your Honor.

14             THE COURT:  And, Mr. Chauvin, do I have your

15   consent to proceed then to conduct this arraignment and

16   motions hearing by video?

17             DEFENDANT CHAUVIN:  Yes, Your Honor.

18             THE COURT:  And is your consent knowing and

19   voluntary?

20             DEFENDANT CHAUVIN:  Yes, it is.

21             THE COURT:  Okay, very well.  Mr. Nelson, anything

22   else from your end?

23             MR. NELSON:  No, Your Honor.

24             THE COURT:  Okay, thank you.

25             Turning to you, Mr. Thao.  Okay, there you are.

1    Are you willing to proceed by video conferencing today for

2    your arraignment and motions hearing?

3              DEFENDANT THAO:  Yes, Your Honor.

4              THE COURT:  And do you know that you have the

5    right to an in-person arraignment and motions hearing?

6              DEFENDANT THAO:  Yes, Your Honor.

7              THE COURT:  And have you had a chance to talk to

8    Mr. Paule and Ms. Paule about what to do there?

9              DEFENDANT THAO:  Yes, Your Honor.

10             THE COURT:  And how do you want to proceed here

11   today?  Are you giving your consent to conduct the

12   arraignment and motions hearing by video?

13             DEFENDANT THAO:  Yes, Your Honor.

14             THE COURT:  Okay.  Mr. Paule, anything else?

15             MR. PAULE:  No.  Thank you, Your Honor.

16             THE COURT:  Okay.  And, Mr. Kueng, are you willing

17   to proceed by video conference for your arraignment and

18   motions hearing?

19             DEFENDANT KUENG:  Yes, Your Honor.

20             THE COURT:  And do you understand you have a right

21   to have an in-person hearing on both of those?

22             DEFENDANT KUENG:  I do, Your Honor.

23             THE COURT:  And have you had a chance to talk to

24   Mr. Plunkett about that?

25             DEFENDANT KUENG:  I have, Your Honor.

```
 1              THE COURT:  And are you giving your consent to
 2      proceed by video today?
 3              DEFENDANT KUENG:  Yes, Your Honor.
 4              THE COURT:  And is your consent knowing and
 5      voluntary?
 6              DEFENDANT KUENG:  Yes, Your Honor.
 7              THE COURT:  Okay.  I may have missed that question
 8      with you, Mr. Thao, so is your consent knowing and
 9      voluntary?
10              DEFENDANT THAO:  Yes, Your Honor.
11              THE COURT:  All right, thank you.
12              So I'll circle back lastly to Mr. Lane, okay,
13      there you are with Mr. Gray.  Are you, Mr. Lane, willing to
14      proceed by video conferencing today for your arraignment and
15      motions hearing?
16              DEFENDANT LANE:  Yes, Your Honor.
17              THE COURT:  And do you understand you have a right
18      to have an in-person arraignment and motions hearing?
19              DEFENDANT LANE:  I do, Your Honor.
20              THE COURT:  Have you had a chance to talk to
21      Mr. Gray your attorney about that?
22              DEFENDANT LANE:  Yes, Your Honor.
23              THE COURT:  And, Mr. Lane, do I have your consent
24      to conduct your arraignment and motions hearing by video
25      today?
```

1           DEFENDANT LANE:  You do, Your Honor.

2           THE COURT:  And is your consent knowing and

3    voluntary?

4           DEFENDANT LANE:  Yes, Your Honor.

5           THE COURT:  Well, I'll ask Messrs. Chauvin, Thao,

6    Kueng and Lane, I ask that you be sure, all four of you,

7    make sure you let us know at any time if you can't hear the

8    proceedings or your video goes out, wave, do something,

9    especially Mr. Chauvin, you're at a remote location, so

10   you'll have to wave or do something so we can get your

11   attention, and I would encourage you to do that if you can't

12   hear or see at any point even if someone is in the midst of

13   speaking.

14           Please also be aware that unless you are in a

15   private breakout room with your attorney, anything you say

16   can be heard by all participants in this Zoom hearing,

17   including counsel for the government.  If at any point

18   during the hearing you need to consult with your attorney,

19   please let us know so that we can facilitate that with a

20   virtual private conference room.

21           So at this point, I'll proceed with the first part

22   of this hearing today, and that is with arraignment starting

23   with Mr. Nelson, your client Mr. Chauvin.  Mr. Nelson, is

24   your client ready to proceed with arraignment?

25           MR. NELSON:  We are, Your Honor.

12

```
1            THE COURT:  Okay.  Sir, if you could state your
2     name, full name please, Mr. Chauvin?
3            DEFENDANT CHAUVIN:  It's Derek Michael Chauvin.
4            THE COURT:  And could you spell your full name for
5     the record?
6            DEFENDANT CHAUVIN:  Yes, it's D-E-R-E-K
7     M-I-C-H-A-E-L, last name is C-H-A-U-V-I-N.
8            THE COURT:  Thank you.  What is your year of
9     birth?
10           DEFENDANT CHAUVIN:  1976.
11           THE COURT:  Have you received a copy of the
12    document called an indictment?
13           DEFENDANT CHAUVIN:  Yes, Your Honor.
14           THE COURT:  Now we could read that in open court
15    for you today or you can waive that; how do you want to
16    proceed on that?
17           DEFENDANT CHAUVIN:  I'll waive it at this time.
18           THE COURT:  Mr. Nelson, go ahead.
19           MR. NELSON:  I apologize, Your Honor, I was just
20    going to advise the Court we waive the reading.
21           THE COURT:  And I think that's what Mr. Chauvin
22    indicated as well.  We'll note that for the record.
23           Mr. Chauvin, to the allegations against you in the
24    indictment, do you plead guilty or not guilty?
25           DEFENDANT CHAUVIN:  Not guilty, Your Honor.
```

```
1            THE COURT:  And the Court notes that, and we will
2    enter a not guilty plea on your behalf at this time.
3            Okay.  Moving on to Mr. Thao.  Mr. Paule, are you
4    and your client ready to proceed with arraignment?
5            MR. PAULE:  Yes, we are, Your Honor.
6            THE COURT:  And, Mr. Thao, could you state your
7    full name for the record?
8            DEFENDANT THAO:  Tou Thao.
9            THE COURT:  Could you spell your name for the
10   record?
11           DEFENDANT THAO:  First name T-O-U, last name
12   T-H-A-O.
13           THE COURT:  What is your year of birth, sir?
14           DEFENDANT THAO:  1986.
15           THE COURT:  Have you received a copy of the
16   document called an indictment?
17           DEFENDANT THAO:  I have, Your Honor.
18           THE COURT:  And we can read it for you in open
19   court here if you want or you can waive it.  What do you
20   want to do?
21           DEFENDANT THAO:  I'll waive it, Your Honor.
22           THE COURT:  We'll note the waiver of the reading
23   then.  And to the allegations against you, Mr. Thao, in that
24   indictment, do you plead guilty or not guilty?
25           DEFENDANT THAO:  Not guilty.
```

1            THE COURT:  And the Court notes your not guilty

2     plea, and we'll enter it in the record.

3            Next, Mr. Kueng, could you state and -- state your

4     full name for the record, please?

5            DEFENDANT KUENG:  J Alexander Kueng.

6            THE COURT:  And could you spell that for us?

7            DEFENDANT KUENG:  Yes, Your Honor.

8            J, A-L-E-X-A-N-D-E-R, last name K-U-E-N-G.

9            THE COURT:  And, sir, what is your year of birth?

10           DEFENDANT KUENG:  1993, Your Honor.

11           THE COURT:  Have you received a copy of the

12    indictment?

13           DEFENDANT KUENG:  I have, Your Honor.

14           THE COURT:  And do you want us to read it to you

15    in open court or are you okay waiving the reading of it?

16           DEFENDANT KUENG:  I will waive the reading of it.

17           THE COURT:  And to the allegations in that

18    indictment against you, Mr. Kueng, do you plead guilty or

19    not guilty?

20           DEFENDANT KUENG:  Not guilty, Your Honor.

21           THE COURT:  The Court notes your not guilty plea,

22    and we'll enter it in the record.

23           And, Mr. Lane, I'll turn to you.  Could you state

24    your full name for the record?

25           DEFENDANT LANE:  Thomas Kiernan Lane.

```
1              THE COURT:  And, sir, could you spell your name
2       for the record?
3              DEFENDANT LANE:  T-H-O-M-A-S K-I-E-R-N-A-N
4       L-A-N-E.
5              THE COURT:  What is your year of birth?
6              DEFENDANT LANE:  1983, Your Honor.
7              THE COURT:  Did you get a copy of the document
8       called an indictment?
9              DEFENDANT LANE:  I did, Your Honor.
10             THE COURT:  And do you want us to read that to you
11      in court or do you want to waive the reading of it?
12             DEFENDANT LANE:  I'll waive that, Your Honor.
13             THE COURT:  Okay.  To the allegations against you,
14      Mr. Lane, in that indictment, do you plead guilty or not
15      guilty?
16             DEFENDANT LANE:  Not guilty, Your Honor.
17             THE COURT:  The Court notes your not guilty plea,
18      and we'll enter that into the record.
19             All right.  Government, anything else on the
20      motions aspect of this proceeding today?
21             MS. SERTICH:  No, Your Honor.
22             THE COURT:  All right.  Very well.  Anything else
23      from you, Mr. Nelson, for purposes of arraignment?
24             MR. NELSON:  No, Your Honor.
25             THE COURT:  Mr. Paule?
```

 1              MR. PAULE:  No, thank you, Your Honor.

 2              THE COURT:  Mr. Plunkett?

 3              MR. PLUNKETT:  No, Your Honor.

 4              THE COURT:  Mr. Gray?

 5              MR. GRAY:  No, Your Honor.

 6              THE COURT:  Thank you.  We move on then to the

 7     motions hearing and oral arguments of this hearing.  And for

 8     the motions hearing, I am planning on first addressing the

 9     joint motion for expert disclosure and expert scheduling

10     order.  I will then address each individual defendant's

11     motions one at a time.  We will then have oral argument on

12     the motions to sever.

13              Lastly, I want to let the parties know that I am

14     planning on ordering post-hearing briefing on certain

15     motions.  I don't need them on all of them.  We will discuss

16     that briefing and the schedule at the end of the hearing.

17              So I'm going to turn right now to the joint

18     motion.  That is ECF No. 91, Joint Motion For Expert

19     Disclosure and Notice of Intent To Seek An Expert Scheduling

20     Order.  I received an e-mail, or the Court received an

21     e-mail this morning, and it is from Ms. Sertich.  It was

22     sent about 8:51 a.m. this morning to my chambers e-mail.

23     And in essence it says, I'll just read it:

24              "Following Judge Leung's suggestion that the

25     parties meet and confer regarding dates for expert

1    disclosures, the parties conferred on Monday,

2    September 13th.  The parties have agreed to the following

3    proposal for such deadlines:

4              All parties' initial expert disclosures due

5    75 days before trial.

6              All parties' rebuttal expert disclosures and any

7    motions in limine challenging the qualifications or scope of

8    testimony of any initial expert disclosures due 50 days

9    before trial.

10             Deadline to file motions in limine challenging the

11   qualifications or scope of testimony of any rebuttal expert

12   due 25 days before trial."

13             Government, I assume the government is on board

14   since you sent me the e-mail.

15             MS. SERTICH:  Correct, Your Honor.  Thank you.

16             THE COURT:  Okay.  And why don't we change it up a

17   little bit.  Mr. Gray, are you and Mr. Lane good with that

18   schedule?

19             MR. GRAY:  Yes, Your Honor.  We're agreeable to

20   it.

21             THE COURT:  Okay.  And, Mr. Plunkett, for Mr.

22   Kueng?

23             MR. PLUNKETT:  Yes, Your Honor.  We are in

24   agreement.

25             THE COURT:  And Mr. Paule for Mr. Thao?

1          MR. PAULE:  Yes, Your Honor, we are in agreement

2     with that as well.

3          THE COURT:  Okay.  And, Mr. Nelson, for

4     Mr. Chauvin?

5          MR. NELSON:  Yes, Your Honor.  We are in agreement

6     with the proposed time line.

7          THE COURT:  Okay.  We'll note that the parties are

8     stipulating to that proposal, and the Court will take it

9     under advisement for consideration, and the Court

10    appreciates the followup by the attorneys after the

11    suggestion by the Court.  So thanks, everyone, for doing

12    that.

13         I'll assume that with that, that takes care of

14    that motion, unless there's anything else further from

15    anyone.  Government?

16         MS. SERTICH:  Nothing at this time, Your Honor,

17    thank you.

18         THE COURT:  If any of the defense counsel want to

19    add anything, just speak up.

20         MR. NELSON:  Nothing further from Mr. Chauvin.

21         THE COURT:  Okay.  All right.  Not hearing

22    anything else then we'll move on.

23         By the way, how many experts are we talking about

24    because in essence these qualification motions, you know,

25    I'll just call them Daubert motions are relatively rare in

1   criminal cases.  I think I've had experts over the years on

2   DNA, ballistics, blood splatter, cause of death and some

3   other topics.  How many experts are we expecting in this

4   case?  Government, I'll start with you.

5           MS. SERTICH:  Your Honor, we haven't made any

6   final determination yet on experts, but we expect to present

7   expert testimony at a minimum on some medical issues and

8   possibly relating to use of force, and I'm not sure of the

9   number at this time.

10          THE COURT:  Okay.  Thank you, Government.  And,

11  Mr. Nelson, I'll just ask you, it's not a demand by the

12  Court, but if you're comfortable giving some heads up for

13  the Court, that would be appreciated, but it's really I'll

14  leave it up to defense counsel how you want to respond to my

15  question.

16          MR. NELSON:  Certainly, Your Honor.  Your Honor, I

17  would anticipate medical expert as well as use of force

18  experts.

19          THE COURT:  Okay.  Mr. Paule, again, the same I'm

20  not demanding it, to the extent you're comfortable giving

21  the Court a heads up.

22          MR. PAULE:  Thank you, Your Honor.  We are

23  likewise expecting both medical expert testimony as well as

24  testimony on a use of force expert.

25          THE COURT:  Okay, same procedure question to you,

1    Mr. Plunkett.

2           MR. PLUNKETT:  Thank you, Your Honor.  We do

3    anticipate a use of force expert testimony and there --

4           THE COURT:  You're breaking up, you might have to

5    get closer to the mic.  I can't hear you, Mr. Plunkett.

6           MR. PLUNKETT:  My apologies, Your Honor.  Can you

7    hear me better now?

8           THE COURT:  Yes.

9           MR. PLUNKETT:  Thank you.  We anticipate having a

10   use of force expert testimony, and there's a potential for

11   medical testimony, but we have not identified those experts

12   at this time or the number of experts.

13          THE COURT:  Very well.  And same procedure and

14   question to you, Mr. Gray.

15          MR. GRAY:  Yes, we will have at least one expert,

16   probably more, but we have one for sure.

17          THE COURT:  Okay.  Very well.  Thank you.

18          Okay, and I just ask the other defendants for your

19   patience.  We'll start with the criminal motions for

20   Mr. Chauvin, who is Defendant No. 1 in this case.  I'm just

21   going to go through the ECF numbers here, and ECF No. 51,

22   Government's Motion for Discovery Pursuant to Federal Rules

23   of Criminal Procedure, 16(b), 12.1, 12.2, 12.3 and 26.2.

24          Mr. Nelson, any objections to the Government's

25   requests?

```
1              MR. NELSON:  No objections, Your Honor.

2              THE COURT:  Anything else from the Government?

3              MS. SERTICH:  No, Your Honor.

4              THE COURT:  Okay.  Moving on to ECF No. 92,

5    Defendant's Pretrial Motion for Disclosure of 404(b)

6    Evidence.  Defendant asks for immediate disclosure of this

7    evidence and the Government proposes providing the

8    Rule 404(b) notice and evidence 30 days before trial.

9              Is there any agreement on this one, folks, Ms.

10   Sertich or Mr. Nelson?

11             MR. NELSON:  Your Honor, I would agree with the

12   Government's proposal of 30 days prior to trial.

13             THE COURT:  Okay.  Government, anything else from

14   you?

15             MS. SERTICH:  No, Your Honor.

16             THE COURT:  Okay.  ECF No. 93, Defendant's

17   Pretrial Motion to Compel Attorney for Government to

18   Disclose Evidence Favorable to the Defendant, anything

19   further on this motion, Mr. Nelson?

20             MR. NELSON:  No, Your Honor.  I rely on the

21   written motion and would note that the Government has been

22   providing discovery as required.

23             THE COURT:  Thank you.  Ms. Sertich or Ms. Trepel?

24             MS. SERTICH:  Nothing more.  Thank you.

25             THE COURT:  And ECF No. 94, Defendant's Pretrial
```

1      Motion for Disclosure of Grand Jury Minutes and Transcript,

2      anything further on this one, Mr. Nelson?

3              MR. NELSON:  Nothing further.  I note that the

4      Government has been providing transcripts for us.

5              THE COURT:  Ms. Sertich or Ms. Trepel?

6              MS. SERTICH:  Nothing further, Your Honor.

7              THE COURT:  ECF No. 95 is Defendant's Pretrial

8      Motion for Early Disclosure of Jencks Act Material.

9      Mr. Nelson, on page 1 of your motion, you state that you are

10     requesting an order requiring the Government to disclose

11     Jencks Act materials I think at least two weeks prior to the

12     commencement of trial.  On page 2 of your motion, you state

13     that you are requesting an order requiring the government to

14     disclose Jencks Act materials at least one month prior to

15     the testimony of each government witness.  Can you clarify

16     that for the Court, please?

17             MR. NELSON:  My apologies, Your Honor.  I would

18     ask for one month.

19             THE COURT:  Okay, 30 days is fair?

20             MR. NELSON:  Yes.

21             THE COURT:  So the request is for 30 days.  Now,

22     the Government is proposing that you reach a reciprocal

23     disclosure date at a later time.

24             Ms. Sertich, I'm not sure why we can't address

25     that today.

1           MS. SERTICH:  Thank you, Your Honor.  The

2    Government has already provided a significant volume of

3    Jencks Act materials to the defense in this case, and the

4    Government agrees to meet and confer about a deadline for

5    future with defense counsel but objects to any Court Order

6    out of the proceedings today.

7           THE COURT:  Okay.  Mr. Nelson, any response to the

8    Government?

9           MR. NELSON:  Your Honor, I leave it to the Court's

10   discretion.

11          THE COURT:  Okay.  Very well.  Thank you.

12          ECF No. 96 is Defendant's Pretrial Motion for a

13   List of Government Witnesses.  Mr. Nelson, you propose that

14   a witness list of case in chief and rebuttal witnesses,

15   which would include witnesses' addresses, be disclosed no

16   later than one month before trial.

17          The Government instead proposes to provide a

18   potential witness list of case in chief witnesses at least

19   30 days prior to trial and explicitly asks that a similar

20   and reciprocal disclosure obligation be ordered.

21          Any agreement on the scope, which is which

22   witnesses need be included and what information about the

23   witnesses needs to be included in disclosure?

24          MR. NELSON:  Your Honor, we have not reached any

25   agreement relevant to that, but we would certainly request

1     the file is at least 30 days prior to trial as the

2     Government proposes, but we can work together also to

3     identify the scope --

4              (Inaudible background noise)

5              THE COURT:  We're breaking up here, you might have

6     to repeat some of that.

7              (Inaudible background noise)

8              THE COURT:  So, Mr. Chauvin, because there's a lot

9     of background noise from your location, we muted you from

10    our side.  That is certainly not intended to prevent you

11    from communicating with us but merely to prevent the

12    background noise from interfering with the rest of the

13    hearing.

14             If at any point you need anything, could you wave,

15    catch my attention or someone in the Court here will, you

16    know, with luck see you are waving and then that way, you

17    know, we know that you want to communicate.  And I remind

18    you also, Mr. Chauvin, that you have the ability to ask for

19    a breakout room at any point to talk to Mr. Nelson about

20    anything related to this matter, and when you make that

21    request, we can create a private breakout room for you and

22    your attorney Mr. Nelson to communicate just between the two

23    of you.

24             So I just want you to if you could hear that and

25    understand that, if you could maybe give a thumbs up,

1        Mr. Chauvin.  Okay, thank you.  All right.

2                MR. NELSON:  Thank you.

3                THE COURT:  Mr. Nelson, you might have to go back.

4        We couldn't pick up that last part because of the background

5        noise.

6                MR. NELSON:  Understood, Your Honor.

7                Your Honor, I again would obviously ask for the

8        Government to produce its witness list 30 days prior to

9        trial, particularly the witnesses it intends to call in its

10       case in chief.  I have no objection to a reciprocal

11       disclosure requirement.  And in terms of whether addresses

12       need to be included, I'm willing to work with the Government

13       to identify whether there are any issues in that regard.

14               THE COURT:  Okay.  Thank you.

15               Ms. Sertich, anything else on that?

16               MS. SERTICH:  Yes, Your Honor.  As noted in the

17       Government's response, we also agree with a 30-day deadline

18       to make those disclosures.  As to the scope, the government

19       would advocate for those disclosures 30 days before to be

20       for witnesses to be called in the Government's case in

21       chief, and also consistent with the practice in this

22       district we typically don't provide addresses, but we will

23       work with Mr. Nelson to provide appropriate notice.

24               THE COURT:  Very well.  Thank you.  Let's move on

25       then to ECF No. 97, Defendant's Pretrial Motion for

1    Discovery and Inspection.  I believe we've already covered

2    the expert witness disclosure issue with the Joint Motion

3    for Expert Discovery or Expert Disclosure, I apologize, in

4    ECF No. 91.  Anything further on ECF No. 97?

5              MR. NELSON:  No, Your Honor.

6              THE COURT:  Okay.  Ms. Sertich?

7              MS. SERTICH:  No, Your Honor.

8              THE COURT:  Okay.  ECF No. 98, Defendant's

9    Pretrial Motion for Discovery and Inspection of Expert

10   Witness Testimony.  Okay, and I think we've already covered

11   this with the Joint Motion for Expert Disclosure.

12   Mr. Nelson, given the joint motion, is this motion moot

13   then?

14             MR. NELSON:  Yes, Your Honor, I would agree with

15   that.

16             THE COURT:  Government?

17             MS. SERTICH:  Agreed, Your Honor.

18             THE COURT:  Okay.  All right.  We'll find that

19   moot.

20             ECF No. 99, Defendant's Pretrial Motion for

21   Government's Agents to Retain Rough Notes.  Anything

22   further, Mr. Nelson, on this one?

23             MR. NELSON:  No, Your Honor.

24             THE COURT:  Government?

25             MS. SERTICH:  Nothing beyond what's in our written

1    submission.  Thank you.

2              THE COURT:  All right.  Thank you.

3              ECF No. 100, Defendant's Pretrial Motion for

4    Discovery and Inspection of All Electronic Surveillance.

5    The Government states that it is not aware of the use of any

6    electronic surveillance used in connection with the

7    investigation of any defendant concerning the current

8    charges, particularly regarding wiretapping, GPS

9    surveillance, radio transmission intercept, triggerfish, or

10   other means of electronic surveillance.

11             Mr. Nelson, is this motion moot too?

12             MR. NELSON:  It is, Your Honor.

13             THE COURT:  Government, anything further from your

14   side?

15             MS. SERTICH:  No.  Thank you.

16             THE COURT:  All right.  And then ECF No. 101,

17   Mr. Chauvin's Pretrial Motion for Participation by Counsel

18   in Voir Dire.  Mr. Nelson, anything further on this one?

19             MR. NELSON:  No, Your Honor.

20             THE COURT:  Ms. Sertich?

21             MS. SERTICH:  No, Your Honor.

22             THE COURT:  Okay.  Thank you.

23             All right.  Mr. Paule, you and Mr. Thao are next.

24   I'll obviously go through the same procedure and again thank

25   everyone for your patience, but I think it's a lot easier

1   for the Court to keep track of these 40 or some motions.

2            ECF No. 41, Government's Motion for Discovery

3   Pursuant to Federal Rules of Civil Procedure 16(b), 12.1,

4   12.2, 12.3, and 26.2.  Mr. Paule, any objections to the

5   Government's requests?

6            MR. PAULE:  No, Your Honor.

7            THE COURT:  ECF No. 72, Motion for Discovery and

8   Inspection.  Anything further on this motion?

9            MR. PAULE:  No, Your Honor.  Although, I would

10  note as Mr. Nelson did, that we've been provided significant

11  discovery by the Government.

12           THE COURT:  Ms. Sertich?

13           MS. SERTICH:  Nothing further, Your Honor.

14           THE COURT:  And ECF No. 73 is Mr. Thao's Motion

15  for Government Agents to Retain Their Rough Notes.  Anything

16  further, Mr. Paule, on this one?

17           MR. PAULE:  No, Your Honor.

18           THE COURT:  Government?

19           MS. SERTICH:  No, Your Honor.

20           THE COURT:  ECF No. 74, Motion for Discovery and

21  Inspection of Expert Witness Testimony.  I believe we've

22  already covered the expert witness disclosure with the Joint

23  Motion for Expert Disclosure on ECF No. 91.  Mr. Paule,

24  given the joint motion, is ECF 74 moot?

25           MR. PAULE:  I believe so, Your Honor.

```
1              THE COURT:  Okay.  Ms. Sertich, anything else?

2              MS. SERTICH:  No, agreed, Your Honor.

3              THE COURT:  ECF No. 75 is Mr. Thao's Motion for

4    Disclosure of Evidence Favorable to him.  Anything further

5    on this motion, Mr. Paule?

6              MR. PAULE:  No, Your Honor.

7              THE COURT:  Ms. Sertich?

8              MS. SERTICH:  No, Your Honor.

9              THE COURT:  ECF No. 76, Motion for Disclosure of

10   404(b) evidence, the defendant requests 404(b) evidence

11   disclosures, but it does not propose a disclosure date.  The

12   Government proposes providing the Rule 404(b) notice and

13   evidence 30 days before trial.  Mr. Paule, any agreement on

14   the 30 days?

15             MR. PAULE:  I would agree to that, Your Honor.

16             THE COURT:  Anything further, Mr. Paule, on that

17   one?

18             MR. PAULE:  No.  Thank you.

19             THE COURT:  Ms. Sertich?

20             MS. SERTICH:  No, Your Honor.

21             THE COURT:  ECF No. 77 is Mr. Thao's Motion for

22   Discovery and Inspection of Records of All Electronic

23   Surveillance.  Again, the Government states that it's not

24   aware of the use of any electronic surveillance in

25   connection with the investigation of any defendant
```

1    concerning the current charges, particularly any wiretaps,

2    GPS surveillance, radio transmission intercepts, triggerfish

3    or other means of electronic surveillance.

4            Mr. Paule, does this moot the motion here?

5            MR. PAULE:  Yes, Your Honor.

6            THE COURT:  All right.  Ms. Sertich, anything else

7    on that?

8            MS. SERTICH:  No, Your Honor.

9            THE COURT:  And ECF No. 78 is Motion for

10   Severance.  We will address this issue later in the hearing,

11   so we'll reserve that one for oral argument and that's the

12   one where I think we'll just have all the lawyers, whoever

13   has a part in that motion, we'll have you argue that

14   together later on after we go through all of these motions

15   here.

16           ECF No. 79, Motion for Disclosure of Government

17   Witness List.  Mr. Paule, you proposed that a list of case

18   in chief and rebuttal witnesses, which would include

19   addresses of the witnesses be disclosed no later than six

20   months before trial.  Government instead proposes provide a

21   potential witness list of case in chief witnesses at least

22   30 days prior to trial and explicitly asked that a similar

23   and reciprocal disclosure obligation be ordered.  Any

24   agreement on the scope such as which witnesses and what

25   information about the witnesses needs to be disclosed, Mr.

1    Paule?

2              MR. PAULE:  Your Honor, I would agree that we

3    don't need the witnesses' addresses.  I can speak to the

4    Government.  I believe we can reach an agreement as to how

5    we're going to be able to locate these people, but I would

6    note that this is probably going to be a large number of

7    witnesses called in this case, presumably more than in most

8    cases I've had, which is why I've asked for that lengthy

9    time frame.  Other than that, I don't have anything further.

10             THE COURT:  Okay.  And you'll work with

11   Ms. Sertich on trying to come to some type of agreement on

12   the kind of information needed?

13             MR. PAULE:  We certainly will, Your Honor.

14             THE COURT:  Ms. Sertich, anything else on that

15   point?

16             MS. SERTICH:  No, Your Honor, just the same

17   limitations as we mentioned with respect to Defendant

18   Chauvin.

19             THE COURT:  Okay.  Any agreement on reciprocal

20   disclosure of witnesses?  Mr. Paule?

21             MR. PAULE:  Your Honor, we would be fine with

22   that.

23             THE COURT:  Ms. Sertich, anything else?

24             MS. SERTICH:  No, thank you, Your Honor.

25             THE COURT:  All right.  With respect to ECF 79, I

1       think that covers the items I had on my list.  Anything

2       further from you, Mr. Paule?

3                   MR. PAULE:  Nothing at this point, Your Honor.

4       Thank you.

5                   THE COURT:  Ms. Sertich?

6                   MS. SERTICH:  No, Your Honor.  Thank you.

7                   THE COURT:  ECF No. 80 is Motion for Early

8       Disclosure of Jencks Act Materials.  Mr. Paule, you are

9       requesting an order requiring the Government to disclose

10      Jencks Act materials 30 days prior to trial.  The Government

11      instead proposes that the parties will reach an agreement

12      for reciprocal disclosures at a later date.

13                  Government, I think I posed the question to you

14      earlier the same question, can we get some sort of

15      agreement?  If we can't, when will we?

16                  MS. SERTICH:  Thank you, Your Honor.  The

17      Government will work with defense counsel to reach an

18      agreement.  As I've noted earlier, we've already made a

19      significant volume of Jencks Act disclosures, but we just

20      object to an order at this time.

21                  THE COURT:  Okay.  Mr. Paule, anything further on

22      that one?

23                  MR. PAULE:  Your Honor, I think that Ms. Sertich

24      and the Court's suggestion is fine.  We will work together.

25      If we have an issue, we can bring it to the Court's

1      attention, but they have been provided, as Ms. Sertich sent

2      us a significant amount of material.

3                  THE COURT:  Okay, all right, thank you.

4                  Okay, ECF No. 81 is Mr. Thao's Motion for Giglio

5      Material.  Anything further on this motion, Mr. Paule?

6                  MR. PAULE:  No, Your Honor.

7                  THE COURT:  Ms. Sertich?

8                  MS. SERTICH:  No, Your Honor.

9                  THE COURT:  And ECF 82 is Mr. Thao's Motion for

10     Disclosure of Grand Jury Transcripts.  Anything further on

11     this motion, Mr. Paule?

12                 MR. PAULE:  No, although the Government has

13     provided a significant amount of Grand Jury transcripts at

14     this point already.

15                 THE COURT:  Okay.  Ms. Sertich?

16                 MS. SERTICH:  Nothing further, Your Honor.

17                 THE COURT:  Thank you.  ECF No. 83 is a motion, is

18     Mr. Thao's Motion for a Bill of Particulars.

19                 Mr. Paule, what are your specific arguments on the

20     basis for relief under Rule 7 as well as the sufficiency or

21     insufficiency of the indictment?

22                 MR. PAULE:  Just a second, Your Honor.

23                 THE COURT:  Sure, take your time.

24                 There's a lot of motions I have yet to find the

25     right papers.  And, obviously, Government and Ms. Sertich,

1    I'll be asking for a response afterwards so you might want

2    to start searching on your notes, too.

3              MR. PAULE:  Your Honor, if I may?

4              THE COURT:  Yes.

5              MR. PAULE:  I would point out that there is some

6    specificity in the indictment with regards to my client's

7    action.  However, I did request in my motion, I requested

8    specific notice on how my client's particular actions acted

9    to deprive Mr. Floyd of his right to be free and how his

10   actions contributed to the bodily injury or death of

11   Mr. Floyd with regard to Count II.

12             With regard to Count III, the same issue would be

13   as how did my client willfully fail to aid Mr. Floyd or how

14   did we specifically -- as to what substantial risk of harm

15   to Mr. Floyd that my client did ignore?  I do note that the

16   Government put in specific actions if my client, but I think

17   my notice is required -- we're required to make this notice

18   under the existing case law regarding those two specific

19   acts with regards to Counts II and III for my client.

20             THE COURT:  Yeah, and obviously defense has to

21   file whatever motions you deem would be appropriate.  Okay.

22             Ms. Sertich, anything else on that?

23             MS. SERTICH:  Your Honor, as stated in the

24   response to this motion, the indictment itself answers the

25   questions posed by Thao in his motion, mainly, that he

1    willfully failed to intervene to stop co-defendant Chauvin's

2    use of unreasonable force, which force is described in the

3    indictment, and that Defendant Thao saw Mr. Floyd lying on

4    the ground and in clear need of medical care and willfully

5    failed to aid Mr. Floyd, and that not only was there a

6    substantial risk of harm to Mr. Floyd, that he was in fact

7    harmed by way of both bodily injury and death.  Nothing

8    further beyond that.

9            THE COURT:  Okay.  Let's move on to ECF No. 84,

10   Motion for Disclosure of Post-Conspiracy Statements of

11   Co-Defendants.  In its consolidated response, the Government

12   states it will provide 14 days prior to trial, reports

13   detailing any post-arrest statements made by defendants that

14   it intends to introduce in its case in chief, as well as

15   statements of unindicted co-conspirators, if the government

16   plans on calling such witnesses.

17           Mr. Paule, does this sufficiently respond to your

18   motion?

19           MR. PAULE:  It does, Your Honor.

20           THE COURT:  And anything further on this motion,

21   Mr. Paule?

22           MR. PAULE:  No.  Thank you, Your Honor.

23           THE COURT:  All right.  Very well.  Government,

24   Ms. Sertich?

25           MS. SERTICH:  Nothing further, Your Honor.

1          THE COURT:  Okay.  Mr. Thao's motion in ECF No. 85

2     is Motion for Participation by Counsel in Voir Dire.

3     Anything further on this, Mr. Paule?

4          MR. PAULE:  No.  Thank you, Your Honor.

5          THE COURT:  Ms. Sertich, for the Government?

6          MS. SERTICH:  Nothing further, Your Honor.

7          THE COURT:  Okay.  Thank you, Mr. Paule and Mr.

8     Thao.

9          I will turn now to Mr. Kueng, you and

10    Mr. Plunkett.  And Mr. Kueng is Defendant No. 3 in this

11    case.

12          ECF No. 42 is Mr. Kueng's or actually it's the

13    Government's motion, I apologize, for Discovery Pursuant to

14    Federal Rules of Civil Procedure 16(b), 12.1, 12.2, 12.3 and

15    26.2.  Mr. Plunkett, any objections to the Government's

16    requests?

17          MR. PLUNKETT:  No, Your Honor.

18          THE COURT:  Government, anything further?

19          MS. SERTICH:  No, Your Honor.

20          THE COURT:  ECF No. 62 is Mr. Kueng's Pretrial

21    Motion for List of Government Witnesses.

22          Mr. Plunkett, do you propose that a witness list

23    of case in chief and rebuttal witnesses, which would include

24    witnesses' addresses, be disclosed no later than one month

25    before trial?  The Government instead proposes to provide a

1        potential witness list of chief witnesses, case-in-chief

2        witnesses at least 30 days prior to trial and explicitly ask

3        that a similar and reciprocal disclosure obligation be

4        ordered.

5                Any agreement on the scope of this?  That is which

6        witnesses need to be included, and what information about

7        the witnesses needs to be included in any disclosure?

8        Mr. Plunkett?

9                MR. PLUNKETT:  We don't have an agreement as to

10       the scope at this point but certainly I can work with the

11       Government to come to a reasonable conclusion on that

12       assuming that there's an order that disclosure should be

13       made in 30 days versus one month.  Thirty days is fine with

14       me.

15               THE COURT:  Okay.  And what about the

16       reciprocality request of the government, Mr. Plunkett?

17               MR. PLUNKETT:  I agree to a reciprocal aspect to

18       that order just noting for the Court, for the record, that

19       because the defense goes second, that if something comes up

20       during trial that wasn't anticipated, we would respectfully

21       note that we wouldn't be able to comply in that regard.

22               THE COURT:  Okay.  Ms. Sertich, anything?

23               MS. SERTICH:  That sounds reasonable, Your Honor,

24       and the Government would again argue that the order only be

25       as to the Government's witnesses for the case in chief and

1    consistent with the practice in the district not require

2    addresses but that we will work with defense counsel on that

3    type of information.

4            THE COURT:  Okay.  All right.

5            ECF No. 63, Mr. Kueng's Pretrial Motion for

6    Pretrial Disclosure of Rule 404 Evidence.  Defendant asks

7    for immediate disclosure of this evidence, and the

8    Government proposes providing Rule 404(b) notice and

9    evidence 30 days before trial.  Any agreement on this one,

10   Mr. Plunkett?

11           MR. PLUNKETT:  Thirty days is acceptable, Your

12   Honor.

13           THE COURT:  Anything further from your side,

14   Mr. Plunkett?

15           MR. PLUNKETT:  Nothing further, Your Honor.

16           THE COURT:  Okay.  Government, anything else on

17   your end?

18           MS. SERTICH:  No, Your Honor.  Thank you.

19           THE COURT:  ECF No. 64 is Defendant's Pretrial

20   Motion for Disclosure of Grand Jury Minutes and Transcript.

21   Anything further on behalf of Mr. Kueng, Mr. Plunkett?

22           MR. PLUNKETT:  No, Your Honor.

23           THE COURT:  Ms. Sertich for Government?

24           MS. SERTICH:  No, Your Honor.

25           THE COURT:  Okay.  ECF No. 65 is Mr. Kueng's

1    Pretrial Motion for Early Disclosure of Jencks Act

2    Materials.  Mr. Plunkett, you are requesting an order

3    requiring the Government to disclose Jencks Act materials at

4    least one month before trial.  The Government instead

5    proposes that the parties will reach an agreement for

6    reciprocal disclosures at a later date.

7           Again, Ms. Sertich, any additional -- well, for

8    the record, why don't you respond to Mr. Kueng's motion

9    here.

10          MS. SERTICH:  Certainly, Your Honor.  The

11   Government has already provided a significant volume of

12   Jencks Act materials to the defendant in this case, and the

13   Government believes we will be able to meet with defense

14   counsel and reach an agreement on further Jencks Act

15   materials.  However, the government objects to a Court order

16   at this time.

17          THE COURT:  Anything else from the Government

18   before I turn it back over to Mr. Plunkett?

19          MS. SERTICH:  No, thank you.

20          THE COURT:  All right.  Mr. Plunkett, anything

21   else?

22          MR. PLUNKETT:  Thank you, Your Honor.  I would

23   point out that I think that Ms. Sertich is absolutely

24   operating in good faith on this motion and has a history of

25   doing that throughout the entire time I've ever worked with

1    her, but I would still like to have a deadline of one month

2    or 30 days before trial because of the volume of information

3    that we've already received and the difficulties that would

4    be posed responding to or adjusting our strategies in our

5    trial if it's later than that.  So I'm sure that we'll work

6    together and probably won't have a problem, but I would

7    still like to have a deadline.

8                THE COURT:  Ms. Sertich, Mr. Plunkett is basically

9    saying there's a lot of discovery.

10               MS. SERTICH:  It's true, Your Honor, and he has

11   the Jencks Act materials, most of which he has to date, so I

12   feel confident, as he said, that we can talk about this

13   going forward and reach an agreement that's reasonable.

14               THE COURT:  All right.  Okay.  Thank you.

15               ECF 66 is Mr. Kueng's Motion for Brady Materials.

16   Anything further on this one, Mr. Plunkett?

17               MR. PLUNKETT:  No, Your Honor.

18               THE COURT:  Government?

19               MS. SERTICH:  No, Your Honor.

20               THE COURT:  Then moving on to ECF No. 67, which is

21   Mr. Kueng's Motion for Disclosure of Giglio Material.

22   Anything further from defense on this one?

23               MR. PLUNKETT:  Nothing further, Your Honor.

24               THE COURT:  And from the Government?

25               MS. SERTICH:  No, Your Honor.

1              THE COURT:  Next, ECF No. 68, is Mr. Kueng's

2      Pretrial Motion for Discovery and Inspection.  Anything

3      further on this motion, Mr. Plunkett?

4              MR. PLUNKETT:  Nothing further, Your Honor.

5              THE COURT:  Ms. Sertich?

6              MS. SERTICH:  Nothing further, Your Honor.

7              THE COURT:  ECF No. 69 is Mr. Kueng's Pretrial

8      Motion for Severance of Mr. Chauvin.  Again, we'll have oral

9      arguments in a moment here on this, and so we'll save

10     additional discussions, arguments and record making for that

11     time.  So we'll reserve 69, for now anyways.

12             ECF No. 70, Mr. Plunkett, is a Motion to Strike

13     Surplusage.  Mr. Plunkett, the Court sees that you filed a

14     memorandum in support of this motion in ECF No. 87.  This is

15     a motion I don't see filed very often.  Could you elaborate

16     a little bit more for me, please?

17             MR. PLUNKETT:  I can, Your Honor, but I would also

18     point out that Mr. Gray on behalf of Mr. Lane filed, well,

19     it's not an identical motion and memorandum, it's on the

20     same issue, and to be respectful of court time, Mr. Gray and

21     I had talked about him arguing that motion, and I would

22     adopt his arguments.  I think that the motion and memorandum

23     are fairly straightforward as is the rule and particulars of

24     this case are similar or even identical between Mr. Kueng

25     and Mr. Lane, so I would adopt the future argument of

1    Mr. Gray.

2              THE COURT:  And that will be fine.  And once we

3    get to Mr. Gray, once he makes his arguments, then,

4    obviously, at that point if you needed to add to that, you

5    would have the opportunity to do that and having worked with

6    all of you over the years, I'm sure you won't go over things

7    that Mr. Gray already argued, and so I'll note that, but

8    catch my attention though because if I'm focusing on the

9    arguments between Mr. Gray and Ms. Sertich, I might

10   accidentally forget that you want to, you might want to

11   participate in that argument, so just get my attention.

12             MR. PLUNKETT:  Will do, Your Honor.

13             THE COURT:  Okay.  Then the Government we'll just

14   reserve this for later on, and you can argue with Mr. Gray.

15             MS. SERTICH:  Thank you.

16             THE COURT:  All right.  With that then, I believe

17   we can move on to the motions for Mr. Lane.  And Mr. Lane,

18   as indicated earlier, you are Defendant No. 4 in this case.

19   And your ECF No. 43 relates to the Government's Motion for

20   Discovery Pursuant to Federal Rules of Criminal Procedure

21   16(b), 12.1, 12.2, 12.3 and 26.2.

22             Mr. Gray, any objections to the Government's

23   requests?

24             MR. GRAY:  No, Your Honor.

25             THE COURT:  Okay.  ECF No. 88 is Mr. Lane's Motion

1    to Strike Surplusage.  I think we counted on that earlier,

2    and Mr. Gray, the Court sees that in your filed memorandum

3    of support, that's ECF No. 89.  First, the Court notes that

4    in your memorandum, you reference, "He had worked as a

5    police officer four shifts as of May 25, 2019."  Is that

6    correct or is that a typo?

7                 MR. GRAY:  No, that's correct.  And Mr. Lane is

8    here if you need testimony on that.  That's when he started

9    working as a police officer.  And as I stated in the memo,

10   which isn't very long, before that he was a recruit, and

11   I'll just get into my argument if you want, Your Honor.

12                THE COURT:  Yeah, go ahead.

13                MR. GRAY:  Okay.  Well, the issue in this case,

14   the main issue in this case for Mr. Lane, and I believe for

15   the other, for Mr. Kueng also, is that they're claiming he

16   should have intervened on what Chauvin did in this case, and

17   the uniqueness of that is that Mr. Lane had four shifts as a

18   police officer, and I believe those shifts, most of them if

19   not all of them, were with Mr. Kueng.  So the idea that he

20   has worked as a police officer, the indictment says he began

21   working as a, in December, he began working as an MPD

22   Officer in December 2019.  That's not correct.  It is not

23   necessary for the indictment, and as the Court knows, this

24   indictment, the indictment goes into the jury room with the

25   jurors in Federal Court.  And according to the case I cited,

1    excuse me, State -- or excuse me, too used to State Court --

2    *U.S. v. Schuler*, 485 F.3d 1148.  In that case, because the

3    defense lawyer did not object to this at the time of

4    motions, he waived his right to object to it at the time of

5    trial, and they then looked at it as plain error and not

6    within the discretion of the Court.

7            So I raise this now because it's very prejudicial

8    because of the issue in the case being intervention, and the

9    common sense dictates that a law officer that has four days

10   on the job would be less apt to intervene.  And what's

11   amazing about Mr. Lane's case is that he did attempt to

12   intervene at least twice, and he also took part in

13   resuscitating Mr. Floyd.

14           In any event, getting back to this issue, the

15   statement is unnecessary for the indictment.  It's wrong,

16   and it's substantially prejudicial because intervention in

17   this case is a big issue, and the individual on the job for

18   four days is not apt to intervene on the conduct of

19   Mr. Chauvin.  That's all I have, Your Honor.

20           THE COURT:  So just to clarify, in your memorandum

21   you reference 2019, is that supposed to be '20?

22           DEFENDANT LANE:  It's December of 2019.

23           MR. GRAY:  Yeah, I'm sorry.  You're right, Judge.

24   It's December of --

25           THE COURT:  Yeah, it's December '19 is what you're

45

1    asserting, but the four shifts reference is to May 25, 2020,

2    as opposed to 2019, is that correct?

3              MR. GRAY:  Yes.  Excuse me, Your Honor.  I'm

4    getting my numbers mixed up.

5              THE COURT:  No, that's fine.  There's a lot of

6    numbers I'm going over here too so.

7              So curiously if the Government puts that in the

8    indictment, doesn't that just give them an additional

9    element of proof that they've got to prove beyond a

10   reasonable doubt?

11             MR. GRAY:  No, because this is an intervention

12   case.  That's the problem I have, and if they're looking at

13   the experience of the officers, and they can't remember it,

14   and the jury asks what was said, we have at this time at

15   least four defendants, they may look at the indictment and

16   say, well, here -- and I've experienced this before -- well,

17   here the indictment says he worked since this date, which

18   would be what, December of 2019.

19             So, no, I think it's extremely prejudicial to my

20   client, and it's surplusage.  It isn't necessary to have in

21   the indictment to prove the elements that he began working

22   as a MPD officer in December of 2019, and that's why we

23   object to it, Your Honor.

24             THE COURT:  Okay.  Thank you.

25             Mr. Plunkett?

1          MR. PLUNKETT:  Thank you, Your Honor.  I did want

2    to add some factual differences between the case clarified.

3    It was Mr. Gray's client was considerably more experienced

4    as an MPD police officer than Mr. Kueng with his four days

5    of experience.  Mr. Kueng actually had three days post-FTO,

6    and one of those days he worked on the desk, wasn't even on

7    the street.  I think that would be a factual difference that

8    is important.

9          Beyond that, you know, I don't want to say

10   everything that Mr. Gray just said again, I just want to

11   adopt it as part of my record in Mr. Kueng's case the legal

12   arguments and point out that, which I think Mr. Gray touched

13   on, that since this is going to be a factual dispute

14   apparently in the trial, to then have the Court read it to

15   the jury, it would be quite prejudicial that the Government

16   is correct.  Thank you, Your Honor.

17          THE COURT:  Okay, Ms. Sertich?

18          MS. SERTICH:  Thank you, Your Honor.  As noted in

19   our response, the Court can strike surplusage pursuant to

20   Rule 7(d) but only where the language is not relevant to the

21   charge made or contains inflammatory and prejudicial matter.

22          I would like to start with just a couple

23   clarifications, and the first of those is that Defendant

24   Lane is not charged in Count II of the indictment at this

25   time with failure to intervene.  So the arguments about

1   intervention aren't applicable in the same way to Mr. Lane

2   as they are to Mr. Kueng at this time.

3           Remarkably, Mr. Kueng admits in his memorandum

4   that technically speaking he was a police officer.  I would

5   proffer to the Court that these dates come from records

6   provided by the MPD that set forth these former officers'

7   rank histories, both of which state that both former

8   officers were police officers as of December 10, 2019.  To

9   the extent that Mr. Plunkett and Mr. Gray want to refer to

10  them as recruits, they actually were designated as recruits

11  from August 14th of 2019 through December of 2019.  So these

12  accurate and factual dates of employment, it is hard to see

13  how there can be an argument made that that information is

14  inflammatory or unfairly prejudicial.

15          THE COURT:  Ms. Sertich, what is the basis of the

16  distinction then between a recruit and becoming an officer?

17  Is there a document that says I am now or you are now an

18  officer as of today?  What's the basis of that?

19          MS. SERTICH:  Your Honor, I'm just going to give

20  you my understanding that I believe they are sworn in as

21  officers at a particular time, and to say that they only had

22  these three or four shifts, that would be beyond their field

23  training.  So they had been on numerous calls between

24  December of 2019 and May of 2020, just under a different

25  designation not on their field training but on their own.

1              Do you want me to address that question further or

2     should I --

3              THE COURT:  Yeah.

4              MS. SERTICH:  Or do you want me to keep going with

5     the argument, sorry?

6              THE COURT:  It's your response.  You can choose.

7              MS. SERTICH:  Okay.  Further, I don't believe I've

8     ever had a case in this district where there hasn't been an

9     instruction to the jury that the indictment only contains

10    allegations and not facts.  They should not be accepted as

11    facts by the jury, and so I think such an instruction would

12    cure the concerns that Mr. Plunkett and Mr. Gray raised.

13             And, finally, these challenge statements are

14    relevant to the charges against the defendants because they

15    could go to the willfulness of the former officers in that

16    they intentionally committed the Constitutional violations

17    knowing that a reasonable officer would not have engaged in

18    those Constitutional violations, and that is more

19    specifically described in the Government's response to the

20    motions.  Thank you.

21             THE COURT:  Okay.

22             MR. GRAY:  Your Honor, can I be heard?

23             THE COURT:  Yes.  Mr. Gray?

24             MR. GRAY:  Okay.  With respect to her first

25    argument, if you read Count III, it is intervention.  It

1    says that my client willfully failed to aid Floyd thereby

2    acting with deliberate indifference.  If he willfully failed

3    to aid him, that's the same as intervention.  It's just

4    different wording.  So he is charged with willfully failing

5    to aid Floyd.  He had four days of being a police officer on

6    his own.  Before that, he was subject to a field training

7    officer, and he was known as a recruit.  That's important in

8    our defense, Your Honor.

9            And why do they want this in the indictment if

10   it's not part of the elements?  When they say that he was

11   eight -- what is that, December of 2019, it says that he was

12   employed as a Minneapolis Police Department Officer.  He

13   wasn't and that's not accurate and it's prejudicial because

14   the jury will have this indictment, even though it's not

15   evidence, jurors will rely on that to look at the elements.

16   And when they look at the elements of this indictment, they

17   will read that he began working as a police officer on

18   December 29th, which is false evidence and is prejudicial to

19   my client's case because in reality, he had been on his own

20   as a police officer for four days, substantially longer than

21   Mr. Kueng, which was three days.

22           So, Judge, I believe why would they resist taking

23   something out that isn't true?  Why is the Government

24   resisting that?  Why don't they put in there that he has

25   been on his own for four days if they need it because that's

1   accurate or put in there that he was a recruit starting in

2   December.

3           THE COURT:  Mr. Gray, how do you respond to that

4   comment, I believe it was a comment, I don't think it was

5   assertion of fact.  Ms. Sertich, when I asked the question,

6   well, how do you distinguish your recruit versus becoming an

7   officer, and she made reference to, well, you're sworn in

8   and then you're, in essence, that's how I interpreted your

9   response, Ms. Sertich, is when you're sworn in, you take an

10  oath then you become an officer at that time, I think, was

11  the end that that -- when was that oath?  That should be

12  just a simple factual matter that people should be able to

13  figure out, right?

14          MR. GRAY:  Yes, I respond to it by saying he did

15  take the oath in 2019.  However, he was not on his own, and

16  by that I mean making decisions on his own until four days

17  before the incident on May 25th.  So he was sworn in as a

18  police officer maybe, but he wasn't a police officer until

19  four shifts as of May 25th.

20          THE COURT:  Okay.  All right.

21          MR. GRAY:  That's when he was on his own, Judge.

22  Before that they have field training officers.  They have

23  people under their control.  Everything they do is

24  monitored.  Everything.  Not until they get into a car like

25  in this case with Mr. Kueng and Mr. Lane are on their own as

51

1     police officers and, therefore, the idea that he began

2     working as a Minneapolis police officer in December 2, 2019,

3     it's wrong.  That's all I have.

4                THE COURT:  Okay.  Thank you.  Mr. Plunkett?

5                MR. PLUNKETT:  Thank you, Your Honor.  I would

6     just add to the facts on this.  If you look at that December

7     date that that's not even when they began the FTO.  At that

8     point in time, both of these actual officers were in the

9     academy.  They weren't even wearing police officer uniforms.

10    I think they were wearing some sweat suits with a pistol

11    belt, and they were taking classes, and they were hopefully

12    taking in how it is that you go about being a police

13    officer, to have the indictment be read to the jury and say

14    that they were police officers at that time is very

15    inaccurate.  It's prejudicial.

16               They didn't even begin their FTO until some time

17    in January, and at that point, I'm not going to reiterate

18    what FTO is because Mr. Gray has adequately explained it,

19    but it's going to be an issue in the trial, and it's just

20    very prejudicial to have that be placed in the jury's mind

21    early on and then have it read to them at the end.  So

22    that's the prejudice.

23               THE COURT:  So, Mr. Plunkett, you're saying that

24    Mr. Kueng was then a full-time officer in January of 2020?

25    You said January, so I just want to clarify the year that

 1    you're referencing.

 2              MR. PLUNKETT:  Correct, December 19th is when both

 3    of these persons took an oath.  They were not working the

 4    street at that time.  They were in an academy.  They were

 5    essentially in law school waiting to be lawyers.  They were

 6    in police academy waiting to be police officers.  After they

 7    went on FTO, they would be tantamount to a certified student

 8    attorney, and to call that person an attorney is a

 9    comparison.  It's fundamentally inaccurate.  It's

10    prejudicial.

11              They were working under experienced officers when

12    they didn't make decisions to arrest people.  They were told

13    to arrest people.  There's videos where their FTOs,

14    Mr. Chauvin is present, they are told to go and chase

15    somebody down and they do.  They're not asked what they

16    think.  They're told do this, do that, and they're evaluated

17    on it.

18              THE COURT:  Well, it's been a couple of years

19    since I've been in baby judge school, but when we're sworn

20    in, we're a judge and then we often go out to baby judge

21    school afterwards, so when you say he was sworn in in

22    December 2019, it seems like he's an officer at that time,

23    isn't he?

24              MR. PLUNKETT:  Only in a very technical sense.

25              MR. GRAY:  The language in the indictment is he

1      began working as a Minneapolis police officer on

2      December 2019 and that's not accurate.  It just simply

3      isn't.  He didn't start working as a police officer until

4      the four shifts prior to May 25th.  And it's extremely

5      important, Your Honor, because when you're working as a

6      recruit, you ask an FTO or a Field Training Officer

7      questions, should I do this?  Should I do that?

8                And in this case with respect to Mr. Lane, as the

9      Court probably knows, he asked to turn him over twice.  He's

10     the one who asked that, and he asked before he went into the

11     ambulance.  He wasn't allowed to turn him over.  Lane said

12     no, but then when he went in, he asked to get into the

13     ambulance, Lane said, okay.  That's evidence that they're

14     just out of recruit school, and they're still relying on a

15     field training officer, and both of these officers knew that

16     Lane, or excuse me, Chauvin was a field training officer.

17     In fact, I think Mr. Kueng, that was his field training

18     officer.

19               So it's important the language in the indictment

20     "began working as a Minneapolis police officer" is not fair,

21     is not a fair representation of what my client was doing.

22     I'm done.  Thank you, Judge.

23               THE COURT:  Okay.  Thank you.  Ms. Sertich, I'm

24     giving you the opportunity to respond at this time.

25               MS. SERTICH:  Thank you, Your Honor.

1              In terms of argument, I would just again say that

2       the indictment is accurate and not prejudicial.  And to

3       clear up a few points, Mr. Gray keeps referring to Mr. Lane

4       as having been a recruit up until right before these four

5       shifts that he did.  But according to the Minneapolis Police

6       Department, Mr. Lane was designated as a recruit, using

7       those words, from August 14th of 2019, through December 10th

8       of 2019.

9              Now, they would have been in the academy up until

10      that date, but to be clear, they become officers at the

11      point of graduation from the academy, and they were

12      graduated from the academy and sworn in as officers as of

13      December 10, 2019.  I have nothing further at this time.

14              THE COURT:  Okay.  All right.  Anything else from

15      you, Mr. Gray, on that?

16              MR. GRAY:  No, Your Honor.  Just that you're under

17      the control of a police officer until four days prior to

18      May 25th and that can't be argued that they were not.

19      That's all I have.

20              THE COURT:  All right.  Mr. Plunkett?

21              MR. PLUNKETT:  Nothing further, Your Honor.

22              THE COURT:  Government in response to Mr. Gray,

23      anything?

24              MS. SERTICH:  No, thank you, Your Honor.

25              THE COURT:  All right.  Thank you, everyone, for

1    being prepared for the argument.

2           Let's move on to ECF No. 90, and this is Motion to

3    Join Co-Defendants Pretrial Motions.  Mr. Gray, you

4    indicated in a filing that you're specifically asking to

5    join Defendant Kueng's Pretrial Motion for Severance from

6    Mr. Chauvin.  That's ECF No. 69.  And Defendant Kueng's

7    Motion for Brady Materials, ECF No. 66; and Defendant

8    Kueng's Motion for Disclosure of Giglio Materials, ECF No.

9    67.  Mr. Gray, if you could just confirm that, is that

10   correct?

11          MR. GRAY:  That's correct, Your Honor.  And I'm

12   not going to argue the Brady and Giglio.  I just did that

13   for the record.  The only argument I would make would with

14   respect would be a short argument with respect to severance,

15   which you're going to do that at the end, correct?

16          THE COURT:  Yes, and I think that brings us to the

17   severance motion, actually.

18          Anything else, Ms. Sertich, on ECF No. 90?  That,

19   again, is Defendant's Motion to Join Co-Defendants Pretrial

20   Motions.  Anything else on that one?

21          MS. SERTICH:  No, Your Honor.  Thank you.

22          THE COURT:  All right.  Okay.  Next, let's move to

23   the Motions to Sever, ECF No. 69 for Mr. Kueng and Mr. Lane,

24   and ECF No. 78 for Mr. Thao.  Both of these motions state

25   separate reasons for severing Defendant Chauvin's case from

1    the respective defendant's case.

2          So before the parties make their oral arguments

3    today, the Court notes that it will be ordering further

4    briefing on these motions.  Each defendant including -- oh,

5    by the way, on further briefing, I would like further

6    briefing on the last issue, too, of course, that we

7    discussed regarding the surplusage.

8          But back now to the motion to sever, each

9    defendant, including Mr. Lane, Mr. Gray, will be required to

10   submit post-hearing briefing, which states the specific

11   factual and legal bases for severing their case from

12   Defendant Chauvin's and all arguments in support of

13   severance.

14         With that, I start with you, Mr. Paule, and I

15   suppose in some ways it's apropos that you and I start this

16   dialogue regarding the severance given that I believe we

17   haven't argued this in this century anyways, and you also

18   won't have your former colleagues I believe then Public

19   Defender Moreno, Assistant Public Defender Moreno, who is

20   now Judge Moreno, and also Mr. Goetz to help you.  I'm sure

21   Mr. Plunkett and Mr. Gray will be more than happy to jump

22   in.

23         So with that, I'm just going to start off, Mr.

24   Paule, unlike in Minnesota State Court, joining defendants

25   is fairly common in federal cases, and I would bet that you

1    and Mr. Plunkett and Mr. Gray have litigated dozens of joint

2    defendant cases in Federal Court.  Severance is much more

3    the exception it seems to me in Federal Court, though we

4    know it does occur as evidenced by a case now in trial in

5    the Northern District of California.  So why would I sever

6    this case specifically with respect to your client, Mr.

7    Thao?

8              MR. PAULE:  Well, Your Honor, the rules do allow

9    the Court to sever when there is prejudice, and I would

10   point out that this case, unlike any other case I've had at

11   least in Federal Court, has the potential for grave

12   prejudice with regard to my client --

13             THE COURT:  Hold on just a moment.  For some

14   reason, our screen went off.  It's back on, sorry.

15             Okay, I apologize.  Mr. Paule, you were up.  You

16   can respond to the Court's question, so please if you could

17   start, I believe you were arguing prejudice.

18             MR. PAULE:  Yes, Your Honor.  And with regard to

19   the specific prejudice as to my client being joined with

20   Mr. Chauvin, I think the idea is there will be much evidence

21   that will be brought into play with regard to Officer

22   Chauvin.  It would not be brought into play were my client

23   to be severed off with him.

24             And I think just in terms of an evidentiary issue,

25   you've got the Spriegl, the prior incident, which is the

1      subject of a separate indictment, but my guess is the

2      Government will be trying to bring that in as 404(b)

3      evidence in this case, and I think that were my client to be

4      severed off, that would come into play.

5            I think the backdrop with regard to this case is

6      the sheer amount of publicity involving cases alleging

7      police brutality throughout the nation but, specifically,

8      with regard to this case.  Additionally, there was a large

9      amount of what could be determined social unrest following

10     the incident involving Mr. Floyd that bore down on this

11     community and this district following this incident

12     occurring.  And I think the fact that my client would be

13     tried with Mr. Chauvin would be prejudiced in not just in

14     the additional evidence but also the addition of just

15     societal prejudice that would be brought about with regard

16     to be tried as a separate -- with a co-defendant involving

17     Mr. Chauvin, and I think that's something that would cause

18     severe prejudice to my client.  I think the jury would have

19     a difficult time sorting things out, and it's all to the

20     prejudice of my client.

21           Additionally, and this doesn't go directly to

22     Mr. Chauvin, but the Court can infer from the arguments of

23     both Mr. Plunkett and Mr. Gray, that one of the theories of

24     defense is going to be that their clients were new on the

25     job and that they were relying on the actions of their

1      senior officers.

2              As was stated in the indictment, my client was

3      employed by the MPD for a number of years prior to this

4      incident, and you can see that both the attorneys for

5      Mr. Lane and Mr. Kueng are using that to try to point out

6      that their clients were rookies and were deferring to my

7      client.  This would in turn bring into play the idea that

8      there's a second prosecutor.  Justice Stevens spoke about

9      this in a concurrence in *Zafiro*, and I don't know if the

10     Court has that cite.  Again, I can provide that to the

11     Court.

12             THE COURT:  I think I'm very familiar with *Zafiro*,

13     and believe we cited it in the last century I cited it.

14             MR. PAULE:  We did, Your Honor, but I think that

15     really brings out into play something that would occur in

16     this case were my client to be joined not only with

17     Mr. Chauvin but presumably with Officers Lane and Kueng.

18             I would agree that this is, at this point, at

19     least somewhat premature, but I think the Court can sense

20     from the arguments from both Mr. Lane and Mr. Kueng that

21     their theories are going to be that their clients were

22     rookies and that they were deferring to their senior

23     officers.  My client is one of those.

24             Were my client to have an individual trial, he

25     wouldn't be dealing with this and dealing with a second

1    prosecutor, and this is something I will flesh out in the

2    memo, Your Honor, but I think this case has specific

3    individual concerns that most cases don't.

4              I am familiar with the rules in Federal Court, and

5    I understand that the joinder is the norm, and it's a rare,

6    rare case where somebody is actually severed off, but I

7    think this case presents those type of prejudice, and I

8    would ask the Court to sever my client, and we will

9    obviously supplement the record with a memorandum.

10             THE COURT:  Sure.  Thank you.

11             Government, I'll give you more of a general

12   opportunity to respond later on after the three defendants

13   have argued, but I do want to ask you specifically on two

14   points in response to Mr. Paule's arguments.  One relates to

15   his reference to the Spriegl of I believe what Mr. Paule

16   and, correct me if I'm wrong, when you referenced the

17   Spriegl with respect to Mr. Chauvin, I believe was what

18   you're alluding to with the 404(b) and the incident from

19   approximately 2017, is that what you're referencing?

20             MR. PAULE:  Yes, Your Honor.

21             THE COURT:  Okay.  So, Ms. Sertich, in essence,

22   look, we're in a separate trial.  We wouldn't have to deal

23   with the Spriegl issue from the 2017 case possibly.

24             Secondly, although, we in all fairness we don't

25   know what is going to be admitted or not at this point, so

1    and also there's a reference to, well, by Mr. Paule it's

2    pretty clear, he says look, just listen to what Mr. Lane and

3    Mr. Kueng were arguing this morning on the surplusage is

4    basically that their argument is going to be, well, they're

5    inexperienced officers, new on the job or, you know,

6    wherever that argument goes, and your client is going to be

7    an experienced officer, meaning Mr. Thao is an experienced

8    officer.  Can you address those two points because they do

9    relate specifically to Mr. Thao?

10          MS. SERTICH:  Yes, Your Honor.  And, first, I will

11   note as referenced by Mr. Paule that the defendants agreed

12   that the motions they filed here were premature because the

13   record was insufficiently developed as to why a severance

14   from Mr. Chauvin was appropriate.  And so the Government

15   will seek additional briefing as you've indicated will

16   happen, and we'll address all of this in a lot more detail.

17          As to the 404(b) incident from 2017, I'm not

18   prepared at this point to make a representation about

19   whether we would seek to introduce that evidence or not.

20   That's something that we would be a decision that would be

21   made at a later time.

22          And as to point number 2, Mr. Thao has only sought

23   severance from Mr. Chauvin, so it's unclear to me how his

24   second concern would be addressed if he was still in trial

25   with former officers Lane and Kueng.

1          THE COURT:  I think that's a very fair comment,

2     Ms. Sertich.  Mr. Paule?  I think my recollection was the

3     severance related from Mr. Chauvin not the other two

4     defendants.

5          MR. PAULE:  It does at this time, Your Honor, but

6     the idea is that if we're seeking severance, we need to

7     address the Court on this as soon as possible.  Clearly,

8     they're not in trial yet.  We don't know exactly what the

9     defenses are going to be, but I think it's pretty clear from

10    this argument, you can see what the alignment is in this

11    particular case that it looks like both Mr. Lane and Mr.

12    Kueng will be seeking to distinguish their clients and

13    that's a nice way of putting it from my client at least in

14    terms of experience, in terms of duty to intervene or, as

15    Mr. Gray put it -- may I have just a moment, Your Honor?

16    Hopefully failing to aid Mr. Floyd.  I think it's pretty

17    clear what their arguments are going to be is, hey, look

18    we're rookie officers, and we're deferring to the senior

19    officers; and, specifically, it sounds like Mr. Kueng is

20    going to say that Officer Chauvin was his particular field

21    training officer.

22          And while my motion is specific to Mr. Chauvin at

23    this point, I think clearly the stage is set for the type of

24    antagonism that was talked about in *Zafiro*, particularly in

25    the concurrence with the second prosecutor.

1              THE COURT:  Ms. Sertich, anything else on those

2      specific topics as it relates to Mr. Thao?

3              MS. SERTICH:  No, thank you, Your Honor.  We will

4      take the opportunity to provide further briefing once we've

5      seen Mr. Paule's briefing.

6              THE COURT:  Very well.  Okay.

7              Thank you.  Anything else?  I'm going to give all

8      the other lawyers an opportunity for their input too.

9              Mr. Paule, anything else from you on this issue?

10             MR. PAULE:  I don't have anything further at this

11     point.  I think briefing would be assisting everyone.

12             THE COURT:  Okay.  All right.

13             Mr. Plunkett, basically the same question for and

14     you and your client Mr. Kueng as I had for Mr. Paule and his

15     client Mr. Thao.  So on what legal and factual basis should

16     I sever Mr. Kueng's case from Mr. Chauvin's?

17             MR. PLUNKETT:  Your Honor, Mr. Paule fully

18     ventilated the answers to those questions.  I would rely on

19     his arguments and adopt them as my own.

20             I would also point out that in my meet and confer,

21     I think that in meeting with the Government prior to this

22     hearing, we agreed that while they oppose this severance,

23     that a decision on severance is premature and that we'd

24     jointly ask that that this be reserved until such time as

25     it's fully ripened.

```
 1              THE COURT:  That's interesting.  I mean these
 2    motions have been filed and when there is filed motions, we
 3    rule on them, usually decisions on severance are usually
 4    without prejudice, usually.  For example, if there's a
 5    denial, it's without prejudice and then as items
 6    materialize, there obviously can be an opportunity for
 7    additional arguments usually if there's additional facts
 8    that come to light.  Again, that's not necessarily my
 9    decision depending on when in the proceeding that will
10    occur, but it seems to me I have a motion before me, and I
11    should rule on it.  So, Mr. Plunkett?
12              MR. PLUNKETT:  No, I don't disagree with the Court
13    on that, Your Honor.
14              THE COURT:  You have to lean in a little bit more.
15    I can't hear you.
16              MR. PLUNKETT:  I don't disagree with the Court on
17    that, Your Honor.  But at the same time, I did want to be
18    honest and forthcoming with the Court in saying that some of
19    the issues on severance may have to develop more in the
20    future, but it is appropriate to have the motion made now,
21    but it is, you know, the prejudice is as Mr. Paule has
22    articulated it.
23              THE COURT:  Okay.  Thank you.  Anything else
24    before I turn it over to Mr. Gray?
25              MR. PLUNKETT:  Nothing further from Mr. Kueng.
```

1                THE COURT:  Okay.

2                All right.  Mr. Gray, I bet you've been warming up

3       on the on-deck circle here, so same question in essence.  On

4       what legal and factual basis should I sever your client

5       Mr. Lane from Mr. Chauvin's case?

6                MR. GRAY:  Well, because it's substantially

7       prejudicial.  This is a unique case.  I doubt if you'll find

8       anybody in that jury panel and the jury pool I should say

9       that did not know that Derek Chauvin was convicted of

10      killing George Floyd.  Now, that's substantially prejudicial

11      on this case because Derek Chauvin is charged in each and

12      every one of these three counts, and so the jury is going to

13      know that Derek Chauvin was convicted.  We should be severed

14      from Derek Chauvin because we should not be saddled and

15      branded with his conviction of murder under the same facts,

16      although these are different words in this indictment, the

17      facts are going to be pretty much the same.

18                And to give you an example, if there are four

19      defendants charged in a case and they're in trial, and one

20      of them decides to plead guilty, one of them gets a

21      dismissal, gets lucky, when the other three are sitting

22      there, the Judge does not tell them anything.  They're not

23      to consider that because they don't know what happened to

24      the individual.

25                Here, the jurors will know that this Chauvin guy,

1    who is sitting there with them, has already been convicted

2    of murder.  And murder is the charge in each and every one

3    of these counts, so I haven't looked at the rule, but I will

4    in the briefing.

5            There's two reasons for severing, and one of them

6    is substantial prejudice.  And if this isn't substantial

7    prejudice, my goodness, now, when you're reading the paper

8    after Mr. Chauvin was convicted, now they don't say

9    allegation or anything.  They say George Floyd was convicted

10   of murder, and they don't separate Chauvin out of that, so

11   when that is mentioned, all four of these defendants are

12   prejudiced.  In this case, we should at least not have Derek

13   Chauvin in this case for trial.  Substantially prejudicial.

14   I can't imagine something more prejudicial than a juror

15   knowing that, well, one of those guys has already been

16   convicted of this, when we're all defending on the same

17   basis pretty much, especially my client.  Thank you.  That's

18   all I have.

19           THE COURT:  So we have a relatively short temporal

20   span of this incident and seems to me isn't there a good

21   argument that that short temporal span of this incident and

22   the nature of the charges and the elements that are at issue

23   against the defendants, don't they lend themselves to a

24   joint trial because each of their separate actions or

25   inactions needs to be evaluated in the context of the

1    other's actions or inactions.  And, Mr. Gray, I toss that

2    one at you, but, obviously, Mr. Paule, Mr. Plunkett can feel

3    free to jump in or you can defer, Mr. Gray, if you want.

4    It's up to you.

5              MR. GRAY:  That's exactly why we need the

6    severance because his actions are going to be held against

7    us in this trial, and everybody knows that Derek Chauvin was

8    convicted of murder.  So we're -- are we going to be

9    presumed innocent of this charge?  I doubt it.  No matter

10   what a juror says on the jury pool, they're all going to

11   know about Chauvin's conviction.

12             There's not another case that I can think of where

13   a trial like this is being held, and one of the jurors knows

14   well, he's already been convicted because the facts are the

15   same.  Not the charge maybe but the charge is identical

16   because all these people are accused of causing the death of

17   George Floyd, resulted in bodily injury and the death of

18   George Floyd on each and every one of these counts, that's

19   what it says and they look right to Derek Chauvin and they

20   say, well, these guys caused the death too.

21             It would be very difficult with Chauvin in this

22   case to get a fair trial for the other three, and that's I

23   can't imagine it not being.  I hope I answered your

24   question, Judge, because is that what you asked?

25             THE COURT:  I think you have.  But, and, again,

1      Mr. Paule and Mr. Plunkett, you can go ahead and respond

2      too.  This case we have videos.  We have videos that

3      captures much, if not most of the events in question, of

4      what these defendants did or didn't do to George Floyd.

5              Don't we have videos?  Don't we have videos that in

6      my mind are the ineluctable modality of the visual images of

7      what happened to Mr. Floyd that needs to be viewed together

8      and weighed together and not separately?

9              MR. GRAY:  But the videos, what the jurors will

10     know that one fellow out there working together has already

11     been convicted.  So that, and with respect to the videos, by

12     the same the trial starts, there will be experts telling you

13     what those videos show, that's what they did in the state

14     case.  Well, this shows that, that shows this.  I mean the

15     videos do not make this case not severable.  The Defendants

16     Lane, Kueng and Thao should have their own trial, not with

17     Derek Chauvin now that he's been convicted, because the

18     video, as I just stated, shows one picture but then we get

19     all these other experts and all these other individuals that

20     say, well, I saw this, I saw that.  So the video is one part

21     of this case, but it's not all of the case.  Thank you.

22             THE COURT:  Thank you, Mr. Gray.  Either

23     Mr. Plunkett or Mr. Paule next?

24             MR. PAULE:  Your Honor, if I may, just briefly I

25     point out that I think what Mr. Gray is trying to articulate

1    is a difference between a piece of evidence in no matter

2    what format it is in versus legal conclusion because that's

3    really what we're dealing with here is asking whether or not

4    a jury can sort out my client, and I'll only speak to him

5    sitting in the same courtroom whether he's really presumed

6    to be innocent sitting across from somebody who the jury

7    will know has already been convicted of a crime in this

8    incident.

9              THE COURT:  Thank you, Mr. Paule.

10             Mr. Plunkett, anything to add?

11             MR. PLUNKETT:  Nothing further, Your Honor.

12             THE COURT:  Okay.  Very well.  Thank you.  Thank

13   you, gentlemen, to responding to the Court's questions and

14   being prepared for that.

15             Ms. Sertich, obviously, I'd like you to respond to

16   the arguments that have been made.  And I do also want to as

17   I alluded to earlier with respect to that other case in the

18   Northern District of California, severance does occur in

19   federal criminal cases.

20             Also, the State Court severed Mr. Chauvin's case

21   from those against Messrs. Thao, Kueng and Lane, why

22   shouldn't we sever them from Mr. Chauvin in the interest of

23   justice?

24             MS. SERTICH:  Thank you, Your Honor.

25             First, I will note, of course, we all know that

1    there was severance granted to Mr. Chauvin from the rest of

2    the defendants in the State Court case, and while I don't

3    know everything about those proceedings, I know that at

4    least part of that severance had to do with COVID concerns

5    and the space that they had in the courtroom, which I think

6    is something that at least at this time we don't have a

7    problem with based on our facilities and resources.

8            I would also note, as Your Honor has already

9    referenced, that the standard for severance is just very

10   difference between the State proceedings and the Federal

11   proceedings.

12           But what I would like to really point out here is

13   that defense counsel is making the point that jurors are

14   going to sit there knowing that Mr. Chauvin has been

15   convicted of murder for his conduct with respect to this

16   same incident.  They are going to know that.  Any juror who

17   is sitting there and knows that will know that whether or

18   not Mr. Chauvin is sitting in the courtroom.  They will know

19   that he was part of that conduct and that he was convicted

20   of murder, and the question will still remain as to whether

21   the remaining defendants either failed to intervene or

22   provided or failed to provide medical assistance after that

23   conduct.

24           But I also want to be clear that this will not

25   involve additional evidence.  No matter whether Mr. Chauvin

1    is there or not because Counts II and III, or most

2    specifically Count II has to do with failure to intervene.

3    No matter what, the government is going to have to prove

4    that Mr. Chauvin was engaging in an unreasonable use of

5    force.  So it will be the same evidence that the government

6    puts on at the trial of the other three defendants,

7    regardless of whether Mr. Chauvin is sitting there or not.

8         As one point of clarification, Mr. Gray mentioned

9    that Mr. Chauvin is charged in all of the counts of the

10   indictment.  He is charged in Counts I and III.  He is not

11   charged in Count II, Failure to Intervene, and even more

12   significantly, neither is Former Officer Lane.  He is also

13   not charged in Count II.

14        And, finally, I would just like to note, Your

15   Honor, it is going to be clear based on the instructions

16   provided to the jury that this is not a murder case.  This

17   is a case involving Constitutional violations.  So to the

18   extent there's any prejudice from the fact that Mr. Chauvin

19   was convicted of murder, I actually feel confident that the

20   defense will also be making that distinction that those are

21   not the charges here, and the jury will be appropriately

22   instructed.  Thank you.

23        THE COURT:  Ms. Sertich, do you know of any Bruton

24   testimonial confrontation concerns at this time?

25        MS. SERTICH:  Your Honor, it's too early at this

1      point to make that statement.

2              THE COURT:  Thank you.  It seems like you were

3      saying at this point you don't know of any, is that what you

4      are saying?

5              MS. SERTICH:  I don't know of any issues at that

6      point because we don't know yet which defendants will be

7      proceeding to trial or anything of that nature.

8              THE COURT:  Fair enough.  Anything else from the

9      Government?

10             MS. SERTICH:  No.  Thank you, Your Honor.

11             THE COURT:  All right.  Reply anyone from the

12     defense side?

13             MR. PAULE:  Your Honor, if I may.  With regard to

14     Ms. Sertich's argument that this is an entirely different

15     sort of fact scenario, and she basically comes right out and

16     admits that every juror will know that Derek Chauvin was

17     convicted of murder.  Well, Derek Chauvin's defense in State

18     Court was that this was an authorized use of force.  And in

19     this case, what they're arguing is that it's an unreasonable

20     use of force.

21             So it's essentially to have my client sitting next

22     to Mr. Chauvin, they're eliminating one of the elements that

23     they would need to prove otherwise, at least in the jury's

24     mind.  I think the Government conceded as much at least in

25     the point of the argument.  And I think, you know,

1    Ms. Sertich is just being candid about that.

2              THE COURT:  Mr. Gray or Mr. Plunkett?

3              MR. GRAY:  Well, I guess my response is that the

4    indictment, Count III, it says, "the offense resulted in

5    bodily injury to and the death of George Floyd."  I did look

6    at the instructions, but I haven't in a while, but my memory

7    is that the jury decides whether or not the offense caused

8    the death of George Floyd.  If that's the case, it's the

9    same as the state case.  I think that is part of one of the

10   elements in the Federal case.

11             It's the same facts, Judge.  Whether the charge is

12   different or not, it's the same evidence that's going to

13   come in this case that came in the State case.  That's all I

14   have.  Thank you, Judge.

15             THE COURT:  Okay.  Thank you, Mr. Plunkett?

16             MR. PLUNKETT:  Nothing further, Your Honor.

17             THE COURT:  Okay.  Thank you.  Ms. Sertich,

18   anything in response specifically to what Mr. Paule and

19   Mr. Gray just replied?

20             MS. SERTICH:  Just in response to Mr. Paule's

21   statement that Mr. Chauvin's defense in State Court was that

22   he was engaging in a reasonable use of force, I would

23   imagine that that would be his defense here as well and that

24   that would only be helpful and the same type of argument

25   that the rest of defense counsel would be making in this

1    case.

2              THE COURT:  Okay.  Mr. Paule, anything in response

3    to that sur-response?  I'm not sure what to call it.

4              MR. PAULE:  It's just a different way of phrasing

5    it, but beauty is essentially in the eye of the beholder.

6    You know, what Ms. Sertich is alleging that will be helpful

7    to us, we might not view it in that same context, and I

8    think it goes again directly to one of the elements that the

9    Government is purported to prove here.

10             THE COURT:  Okay.  Thank you.  At this point, I

11   think we've covered the motions to sever, unless the

12   Government, you have anything else on that.  That's ECF 69

13   and ECF 78.  Anything else on severance other than

14   post-hearing briefing?

15             MS. SERTICH:  No, thank you, Your Honor.

16             THE COURT:  Mr. Paule?

17             MR. PAULE:  Nothing.  Thank you, Your Honor.

18             THE COURT:  Mr. Plunkett?

19             MR. PLUNKETT:  Nothing further.  Thank you, Your

20   Honor.

21             THE COURT:  All right.  Mr. Gray?

22             MR. GRAY:  No, Your Honor.  Thank you.

23             THE COURT:  All right.  Again, we'll switch it up

24   a little bit on you folks, but is there anything at this

25   point that I've missed as far as the ECF motions I need to

```
1    cover?  We had a lot of them, so I think I got them all, but

2    I think last week when we met preliminarily, I encourage

3    everyone to double check their ECF docket numbers, and if

4    you could double check to just make sure we cover

5    everything.

6              Ms. Sertich, anything else?

7              MS. SERTICH:  Just flipping through, Your Honor.

8              THE COURT:  Yeah, go ahead.  Take your time.  I

9    apologize.

10             MS. SERTICH:  I believe you got them all.  Thank

11   you.

12             THE COURT:  Any other issues folks want to be

13   heard on before we get to the briefing and so forth?

14   Government, anything else for purposes of today, this

15   hearing?

16             MS. SERTICH:  Not from the government, thank you.

17             THE COURT:  Mr. Nelson?

18             MR. NELSON:  Nothing on behalf of Mr. Chauvin,

19   Your Honor.

20             THE COURT:  Mr. Paule?

21             MR. PAULE:  Nothing further.  Thank you, Your

22   Honor.

23             THE COURT:  Mr. Plunkett?

24             MR. PLUNKETT:  Nothing further, Your Honor.

25             THE COURT:  And Mr. Gray?
```

1           MR. GRAY:  No, Your Honor.  Nothing further.

2           THE COURT:  Okay.  Okay, folks, so the motions

3    that I would like post-hearing briefing on, one relates to

4    the motions to strike surplusage.  I believe that was ECF 87

5    for Mr. Kueng and 89 for Mr. Lane.  And then there's ECF 69

6    and 78, and those relate to Defendant Kueng, Lane and

7    Thao's motion to sever, so those two I would like additional

8    briefing on.

9           Will anyone be requesting transcripts on this one

10   to capture the arguments?  Ms. Sertich, do you know?

11          MS. SERTICH:  Yes, Your Honor, we'll be requesting

12   a transcript.

13          THE COURT:  Okay.  Mr. Nelson?

14          MR. NELSON:  No, Your Honor.  As Mr. Chauvin is

15   not engaged in either of those motions, we would seek to be

16   excused from the briefing schedule.

17          THE COURT:  Mr. Paule?

18          MR. PAULE:  Your Honor, I think we'll be

19   requesting a transcript at least to the issue of severance.

20   Thank you.

21          THE COURT:  Okay.  Mr. Plunkett?

22          MR. PLUNKETT:  Yes, Your Honor.  We'd be

23   requesting a transcript.

24          THE COURT:  Very well.  Mr. Gray?

25          MR. GRAY:  Yes, Your Honor.  Is the Government

1      going to request it, and we get a copy?  Is that cheaper?

2              MS. SERTICH:  I don't believe that's something

3      court reporters like to hear.

4              THE COURT:  Well, I have enough issues I have to

5      resolve, so I'm not going to get in the middle of that one,

6      but, yes, we will need transcripts.  At this point, let's

7      go -- don't cut the video or audio, but let's go off the

8      formal record so we can discuss briefing schedule and then

9      once we've come to agreement on briefing schedule, we'll go

10     back on the official record and make the dates known.  So we

11     are officially off the record at this time to discuss

12     briefing.

13              (Off the record discussion between Court and

14     counsel.)

15                        (IN OPEN COURT)

16              THE COURT:  We are now back on the record in the

17     arraignment and motions hearing of the case of United States

18     of America versus Derek Chauvin, Tou Thao, J Alexander

19     Kueng, and Thomas Lane.

20              The record should reflect that we took a brief

21     recess off the record anyway to discuss scheduling and

22     availability of transcript, and here's the understanding of

23     the Court after the discussion with the parties, that the

24     parties are agreeable to the schedule as follows:

25              The transcript will be available by September 21,

1    2021.  Defendant's briefs will be due October 12, 2021.  And

2    Government's response brief will be due October 26, 2021.

3    With that, let me just double check my notes and make sure I

4    cover everything I want to.

5            With that, for purposes of this hearing, the Court

6    has no additional items that I need to cover for today.

7    Government, anything else for purposes of today's hearing?

8            MS. SERTICH:  No, thank you, Your Honor.

9            THE COURT:  And Mr. Nelson for Mr. Chauvin?

10           MR. NELSON:  No, Your Honor.

11           THE COURT:  And Mr. Paule for Mr. Thao?

12           MR. PAULE:  No.  Thank you, Your Honor.

13           THE COURT:  Mr. Plunkett for Mr. Kueng?

14           MR. PLUNKETT:  Nothing further, Your Honor.

15           THE COURT:  And Mr. Gray for Mr. Lane?

16           MR. GRAY:  Nothing further, thank you.

17           THE COURT:  All right.  Thank you, everyone, for

18   being prepared, and thank you for your patience.  I'm glad

19   we went over everything in an organized fashion, and thank

20   you, everyone.  We are in recess.

21           (Court adjourned at 12:03 p.m.)

22

23

24           *     *     *     *     *     *

25

1               **REPORTER'S CERTIFICATE**

2          I, **Maria V. Weinbeck,** certify that the foregoing is

3      a correct transcript from the record of proceedings in the

4      above-entitled matter.

5

6                    Certified by:  *s/ Maria V. Weinbeck*
                                    *Maria V. Weinbeck, RMR-FCRR*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25