UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-108(2) (PAM/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br>   Plaintiff, )<br>  )<br> v. )<br>  )<br>TOU THAO, )<br>  )<br>   Defendant. )<br>  ) | UNITED STATES' POSITION WITH RESPECT TO SENTENCING |

The United States of America, by and through undersigned counsel, respectfully submits its position with respect to the sentencing of the defendant Tou Thao. The United States recommends a sentence that reflects both the gravity of the defendant's offense and his relative culpability compared to his co-defendants. More specifically, the United States requests a sentence that is less than co-defendant Chauvin's sentence, which has not yet been ordered but pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) agreement will fall between 240 to 300 months' imprisonment, and significantly more than the Guidelines range applicable to co-defendant Lane, which is a range of 63 to 78 months' imprisonment. Such a sentence is sufficient, but not greater than necessary, to comply with the goals of 18 U.S.C. § 3553(a).

Several factors weigh heavily in favor of a significant prison sentence and against a significant further downward variance. First, the offense itself resulted in the death of Mr. Floyd, and thus caused the gravest of harms. The fact that the defendant was convicted of failing to act to stop Chauvin's unreasonable force does not diminish the defendant's

responsibility for Mr. Floyd's death—Mr. Floyd was in the defendant's custody and care, and the defendant knew he had a duty to protect Mr. Floyd. Furthermore, the defendant had the knowledge, opportunity, information, and time required to recognize the need for action—to stop the unreasonable force and to provide medical aid—and yet he failed to act. The defendant's lack of acceptance of responsibility, including his (at-times incredible) trial testimony merits a significant sentence. Finally, a significant sentence is needed to promote respect for the law and to deter other police officers from standing by as their fellow officers commit crimes. Such a significant sentence would not result in unwarranted sentencing disparities.

## I. PROCEDURAL HISTORY

On February 24, 2022, following a 21-day trial, a federal jury convicted the defendant, former Minneapolis Police Department ("MPD") officer Tou Thao, of two counts of violating 18 U.S.C. § 242. First, the jury found that the defendant willfully deprived Mr. Floyd of the right to be free from excessive force when he failed to intervene in the unlawful force used by former Officer Derek Chauvin. Second, the jury found that the defendant willfully deprived Mr. Floyd of the right to be free from a police officer's deliberate indifference to his serious medical needs, by seeing Mr. Floyd lying on the ground in clear need of medical care, and willfully failing to aid him. The jury found that these offenses resulted in bodily injury to and the death of Mr. Floyd.

## II. THE APPLICABLE GUIDELINES

The United States has reviewed the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office. The United States has no objections to the PSR and

agrees that the advisory Guidelines range is life imprisonment. ECF No. 371 ¶ 111. The United States anticipates that the defendant will make several objections to both the application of the Guidelines and the factual statements contained in the PSR and has addressed those anticipated objections below.

      A.    **The Base Offense Level for Count Two Correctly Utilizes the Second-Degree Murder Guidelines.**

The United States anticipates that the defendant will object to the base offense level. Specifically, he will object to the application of a cross reference for Second-Degree Murder, arguing that the Court should use the same Guidelines cross reference—U.S.S.G. § 2A1.4 (Involuntary Manslaughter)—for both Counts 2 and 3 given that they arose from a "single course of conduct." ECF No. 371 at A.6.

The defendant's argument that the cross reference must be the same for both counts ignores that Count 2 and Count 3 are two different crimes with two different sets of elements. It is often the case that two or more criminal charges result from a "single course of conduct" where the same Guidelines section is used; nonetheless, each crime requires the satisfaction of different elements, and the application of the Guidelines results in a different adjusted offense level. For example, a defendant can be charged with both receipt and possession of child pornography from a single course of conduct committed in a matter of minutes—the defendant downloads child pornography to a device and then possesses that material on his device. The Guidelines section for both crimes is the same—Section 2G2.2—but the base offense level is different for possession of child pornography (18) than it is for receipt of child pornography (22). The Guidelines are calculated separately and then grouped.

Similarly, here, the defendant committed two separate crimes over the course of minutes—violation of civil rights through failure to intervene, and violation of civil rights through deliberate indifference. While generally the defendant's conduct can be described as a single course of conduct, his separate civil rights violations—failing to stop or attempt to stop Chauvin from using excessive force and failing to provide Mr. Floyd with obviously needed medical care—constitute two crimes with different elements. These crimes apply the same Guideline, Section 2H1.1, but are assigned different base offense levels within that Guideline and then grouped.

The use of two different cross-references in the PSR for the two different offenses alleged in Counts 2 and 3 comports with logic. The crime of violating a victim's civil rights through deliberate indifference does not require any excessive use of force, and therefore does not require a cross-reference to the Guideline that applies to a use of force. The crime of violating a victim's civil rights through a failure to intervene *does* require a use of force, and therefore invokes the more serious cross reference. The fact that the base offense level is higher for failure to intervene is appropriate and provides a necessary distinction for defendants like codefendant Lane, who was charged only with, and convicted only of, the deliberate indifference violation charged in Count 3.

For these reasons, the base offense level in this case is properly determined to be level 38.

### B.     The Adjustment for Acting Under Color of Law Applies.

The United States anticipates that the defendant will object to the six-level increase of his offense level for acting under color of law, pursuant to § 2H1.1(b)(1), arguing that it

amounts to double counting because acting under color of law was an element of the offense. ECF No. 371 at A.7. The question, however, is not whether the defendant was convicted of a crime that included acting under color of law as an element, but rather whether his base offense level accounts for his status as a police officer before the six-level color of law adjustment is applied. Here, it does not.

The defendant's base offense level, § 2H1.1(a), applies both to offenses committed under color of law and offenses such as hate crimes, where a defendant acts in a private capacity. *See* § 2H1.1 Stat. Provisions (including § 242 and federal hate crime statutes 18 U.S.C. §§ 245(b), 247, 249 & 42 U.S.C. § 3631, among the statutes that correspond to this guideline). The § 2H1.1 base offense level therefore does not account for the defendant's status as a police officer until the offense level is adjusted under § 2H1.1(b)(1). *See United States v. Volpe*, 224 F.3d 72, 77 (2d Cir. 2000) (no double counting when the guideline calculations for an officer convicted of an 18 U.S.C. § 242 violation included both an adjustment under § 2H1.1(b)(1)(B) because the defendant acted under color of law and § 2A3.1(b)(3)(A) because the victim was in the custody, care, or control of the defendant); *United States v. Hickman*, 766 F. App'x 240, 250-51 (6th Cir. 2019) (affirming the sentence in a § 242 deliberate indifference and excessive force prosecution and holding that there was no double counting where the defendant received a color-of-law adjustment under § 2H1.1(b)(1) because without it, his base offense level would not reflect that he had acted under color of law); *see also United States v. Webb*, 214 F.3d 962, 965 (8th Cir. 2000) (no double counting when the guideline calculations for an officer convicted of an 18 U.S.C. § 242 violation included a color of law adjustment under § 2H1.1(b)(1)(B) because the §

5

2H1.1 adjustment can be independently justified on the basis that the defendant-officer was a public official at the time of the offense).

### C. The Defendant Is an Average Participant.

The United States anticipates that the defendant will object to the PSR on the basis that he should receive a four-level downward adjustment as a minor participant in the offense. ECF No. 371 at A.7. Although it is the position of the United States that the defendant does not qualify for a role reduction under these circumstances, the United States nonetheless believes that the Court should consider the defendants' relative culpability—which is reflected in the United States' sentencing recommendation—in fashioning its overall sentence.

The mitigating role adjustment applies to "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." § 3B1.2 cmt. n. 3(A). "'[M]erely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was deeply involved in the offense.'" *United States v. Jones*, 25 F.4th 1077, 1079 (8th Cir. 2022) (quoting *United States v. Cubillos*, 474 F.3d 1114, 1120 (8th Cir. 2007)). Here, the defendant and Kueng were convicted of failing to intervene to stop Chauvin's excessive force and all three officers were convicted of deliberate indifference to Mr. Floyd's serious medical needs in violation of 18 U.S.C. § 242. The government expects the defendant to claim that he is entitled to a minor role because he never touched Mr. Floyd.

Whether or not the defendant touched Mr. Floyd has no bearing on the defendant's constitutional obligations. Under the Constitution, each officer bears equal responsibility to

6

ensure that a person in custody is not deprived of the constitutional right to be free from unreasonable force. Here, because each officer had an equivalent opportunity to observe the event and an equivalent opportunity to intervene, a reduction for mitigating role would be unwarranted. Moreover, this conclusion is unaffected by the fact that the defendant never touched Mr. Floyd. It is common in failure-to-intervene cases—which by definition involve *inaction*, rather than action—for the defendant not to have touched the victim.

Similarly, with respect to deliberate indifference to Mr. Floyd's medical needs, all four defendants had an independent duty to render aid to Mr. Floyd, who died in their joint custody. According to the expert medical testimony at trial, had any one of them repositioned Mr. Floyd onto his side when he was still breathing, Mr. Floyd would have lived. Had any defendant performed CPR during the initial minutes after Mr. Floyd lost a pulse, it may also have saved his life. The defendant is not substantially less culpable than the other defendants.

### D.   **Factual Objections**

The defendant has made a variety of factual objections to the PSR.[1] It appears that the factual objections are not the sort that would affect his sentencing, and thus, the Court need not rule on them pursuant to Rule 32 of the Federal Rules of Criminal Procedure.

## III.   ARGUMENT

The United States respectfully submits that a substantial sentence of imprisonment that reflects defendant Thao's relative culpability is appropriate. For parity purposes, this

---

[1] Notably, the defendant did not identify a single citation in support of any of his factual objections.

sentence should be less than former Officer Chauvin's and substantially greater than the guideline range applicable to former Officer Lane's conduct.

### A. The Legal Framework

When fashioning an appropriate sentence for a defendant, the Court must first consider the applicable guidelines range. *See United States v. Hernandez*, 518 F.3d 613, 616 (8th Cir. 2008). Although the sentencing guidelines are advisory, they are "the starting point and the initial benchmark" for federal sentencing. *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)).

After determining the applicable guidelines range, the Court must consider the sentencing factors enumerated in 18 U.S.C. § 3553(a). Section 3553 requires the court to consider the need for the sentence imposed to accomplish certain purposes, including to: 1) "reflect the seriousness of the offense"; 2) "promote respect for the law"; 3) "provide just punishment for the offense"; and 4) "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2). Section 3553(a) also requires the court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," and to "impose a sentence sufficient" to comply with the purposes outlined in the provision. 18 U.S.C. § 3553(a)-(a)(1).

### B. The Appropriate Sentence

The totality of the circumstances warrants a significant prison sentence.

#### 1. The Nature and Circumstances of the Offense

The first § 3553(a) factor is the "nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). The evidence adduced at trial proved that the defendant repeatedly failed to

act despite knowing both that he had a duty to act and that the circumstances required him to do so.

There is no dispute that the defendant knew his legal obligations to those in his custody and care.  First, the defendant knew of his duty to intervene not only from his training at MPD, but also based on common sense.  T. Tr. at 3178.  And, even more specifically, he knew that if he saw a police officer using excessive force, he needed to stop the force.  *See* T. Tr. at 3177.  In particular, the defendant knew—and admitted that he knew—that an officer cannot continue to use force if a person is not resisting—and that is true whether the person has a drug issue, a heart issue, excited delirium, or some other medical issue.  T. Tr. 3223.

Second, the defendant was well aware of his duty to render medical aid—a duty that can be satisfied either by an officer himself rendering the aid or ensuring that aid was being provided by others.  T. Tr. 3292.  The defendant understood that, in all cases, and especially in cases of suspected excited delirium, once a person is handcuffed and under control, the person should be rolled on his side to avoid positional asphyxia.  T. Tr. 3223.

There is also no dispute that the defendant had the opportunity—in this case, the meaningful opportunity—to intervene to stop Chauvin's excessive force and to ensure medical aid was rendered to Mr. Floyd.  First, having worked with Chauvin for years, the defendant was in an ideal position to communicate effectively with Chauvin to ensure that Chauvin discontinued his use of force.  T. Tr. 3109.  Second, the defendant's physical position allowed him to stand back and observe the entire situation, including the positions of his partners and Mr. Floyd over the course of many minutes, from a bird's eye view—a

fact that is made clear on the videos of the events. As the Court will recall, the restraint of Mr. Floyd continued for over six minutes before the defendant had any significant interactions with the bystanders. Thus, he was able to focus on the events occurring right in front of him. And, even once he engaged with the bystanders, they provided him with a play-by-play of the events unfolding before them.

Armed with a full understanding of his duties and with a clear opportunity to act, the defendant chose to ignore the facts right in front of him. He ignored his own immediate observations that Mr. Floyd was suffering from a medical condition, whether by virtue of drug use or excited delirium. *See* Gov. T. Ex. 9A at 5; T. Tr. 3215 (it was "obvious" Mr. Floyd was under the influence of drugs even as the defendant was just walking up to the situation). He ignored Mr. Floyd telling him directly that it was the knee on his neck that was causing him to not be able to breathe. *See* Gov. T. Ex. 9A at 6. He ignored both his own eyes and ears, as well as various bystanders telling him about Mr. Floyd: emphasizing that Mr. Floyd was not resisting, had stopped talking, was passing out, and was not responsive; observing that Chauvin was stopping Mr. Floyd's breathing; and requesting that the officers check Mr. Floyd's pulse. *See* Gov. T. Ex. 9A at 8-10.

Not only did the defendant ignore the facts in front of him, the defendant responded with a total lack of diligence and care—or in the words of bystander A.F., he was "kind of just blowing us off . . . ." T. Tr. 2598. For example, bystander D.W. told the defendant that Mr. Floyd was not doing anything (*i.e.*, was not resisting) and questioned how long the officers needed to hold Mr. Floyd down. *See* Gov. T. Ex. 9A at 8. The defendant responded, "This is why you don't do drugs kids." *Id.*

Finally, differentiating this situation from other situations involving excessive force—which often occurs quickly, such as when an officer delivers an unnecessary punch, or fires an unnecessary shot—the defendant here had the benefit of time. The defendant was not forced to make a split-second decision; he had more than nine minutes. Despite those long minutes, the defendant did nothing, and because of that a person in his custody and care died. Thus, the nature and circumstances of the offense merit a significant sentence.

### 2. The History and Characteristics of the Defendant

Section 3553(a)(1) also directs courts to consider "the history and characteristics of defendant." One of the most salient features of the defendant's history is that he served as a law enforcement officer for more than eight years. *See* Gov. T. Ex. 55. Here, and in color-of-law cases generally, this characteristic is aggravating. *See United States v. Thames*, 214 F.3d 608, 614 (5th Cir. 2000) ("A defendant's status as a law enforcement officer is often times more akin to an aggravating as opposed to a mitigating sentencing factor, as criminal conduct by a police officer constitutes an abuse of a public position."). The defendant was a long-serving officer who readily agreed that he was responsible for those in his custody and who specifically knew both of his duty to intervene and his duty to render medical aid to those in his custody and care—yet he failed to act.

### 3. The Seriousness of the Defendant's Offenses, Promotion of Respect for the Law, and Just Punishment

Section 3553(a) also directs the sentencing court to consider the need for the sentence "to reflect the seriousness of the offense, promote respect for the law, and to provide for a just punishment." 18 U.S.C. § 3553(a)(2)(A). A significant sentence appropriately captures the seriousness of the defendant's choices, addresses the excuses he made to justify his lack

11

of action, and provides just punishment for the impact of his crimes on the victim, the victim's family, and the larger community.

As described above, no harm can be greater than the harm perpetrated here: Mr. Floyd died as a result of the defendant's inactions. However, it is not just that a death occurred that makes it so serious. It is also that the death was utterly unnecessary and avoidable, and occurred as a result of the defendant's failure to do the most basic of his duties—to exercise care for someone in his custody.[2] Mr. Floyd was handcuffed, could not get himself medical care, and could not defend against unlawful force. The defendant also failed in yet another of his basic duties—stopping a crime being committed right in front of him. By failing to stop a crime being committed by a fellow officer in his presence, he applied a different standard than he applied over his long career when a non-officer committed a crime. The application of such a double standard damages the public's perception of law enforcement. Thus, the defendant's offenses are offenses both against the individual victim and against the criminal justice system itself because this type of criminal conduct by a law enforcement officer undermines public trust in our system of justice.

Finally, despite the defendant's knowledge of his duties, and his clear failure to act, the defendant did not accept responsibility for his inactions and in doing so demonstrated a

---

[2] Numerous courts have held that crimes committed by law enforcement officers are ones that courts should treat more seriously, not less seriously, than other types of criminal acts. *See Thames*, 214 F.3d at 614; *see also United States v. McQueen*, 727 F.3d 1144, 1157 (11th Cir. 2013) (reversing a below-guidelines sentence in an excessive force case as "a clear error of judgment" because such a crime is a "particularly serious offense"); *United States v. LaVallee*, 439 F.3d 670, 708 (10th Cir. 2006) ("[I]n many instances, committing a crime while acting under color of law will result in a higher sentence – as it did in this case – rather than a lower sentence.").

disrespect for the law. The defendant took the stand and unsuccessfully attempted to excuse and justify his behavior. For example, he argued that he believed that Mr. Floyd was suffering from excited delirium, and thus Mr. Floyd had to be restrained for his own safety as a result of "the protocol," namely, that a person suffering excited delirium must be restrained until medical personnel arrive to sedate a subject who is extremely agitated. T. Tr. 3138, 3217-23. The jury rightly rejected this excuse, given its absurdity in light of the most basic of facts: the defendant knew that if a person is not agitated, he does not need to be sedated (T. Tr. 3226), and the defendant knew that Mr. Floyd had stopped moving (T. Tr. 3230), stopped speaking (T. Tr. 3251), and lost consciousness (T. Tr. 3231). Mr. Floyd was therefore not agitated. In fact, "the protocol"—which the defendant well knew—was to rotate a person onto his side once the person is no longer resisting; and a person is certainly no longer resisting when he is not moving at all and unconscious.

The jury also correctly rejected the remainder of the defendant's excuses. For example, the defendant attempted to justify Chauvin's continued excessive force by arguing that a subject could suddenly wake up and become violent. T. Tr. 3220. Again, such a claim was belied by his own admissions—you can monitor a subject in case he wakes up, "potentially you could be in contact, but not much weight"—but you cannot use force just because a subject might wake up. T. Tr. 3122-23. The defendant even went so far as to attempt to excuse his behavior by explaining that around the time of Mr. Floyd's death, there were a number of people stating that they could not breathe during interactions with police following the death of Eric Garner, and so he "wouldn't know if they were being honest or not." T. Tr. 3122-23, 3201. Of course, on cross-examination such an excuse did not hold

13

water.  Instead, the defendant admitted that he knew it would be inappropriate to disregard a person in his custody saying that he could not breathe, whether or not others had made similar, untruthful statements in the past.  T. Tr. 3203.

The defendant's attempts to justify his behavior demonstrate a clear disrespect for the law.  Though the United States has not sought an enhancement for obstruction of justice, the defendant's testimony came close to obstruction and certainly demonstrates more than a simple lack of acceptance of responsibility.

### 4. Deterrence and Protection of the Public from Further Crimes

Protecting the public and deterring additional criminal conduct is the fourth factor courts are directed to consider under Section 3553(a)(2)(B)-(C).  This Court would ensure public safety by sentencing the defendant to a significant sentence of imprisonment.  The defendant will never again serve as a law enforcement officer, and thus, the need for a sentence to protect the public against future, similar crimes by this defendant is not at issue here.  However, "Congress specifically made *general* deterrence an appropriate [sentencing] consideration under [S]ection 3553(a)(2)(B)," and the Eighth Circuit has "described it as 'one of the key purposes of sentencing.'"  *Ferguson v. United States*, 623 F.3d 627, 632 (8th Cir. 2010) (emphasis added) (quoting *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006)).  A significant sentence will serve as a reminder to other officers that although they undoubtedly have a difficult job, they cannot ignore a crime happening in front of them, especially when it is perpetrated by their fellow officer.  A significant sentence will thus serve to protect the American public by deterring additional crimes and promoting respect for the law.

### 5. Unwarranted Sentencing Disparities

There is no question that Chauvin was the most culpable officer on scene, as it was his excessive force that necessitated his fellow officers' intervention and the need for medical treatment. Given this, the United States recommends that the Court sentence the defendant to a term of imprisonment that is less than the 300-month sentence it has requested for Chauvin. That said, the defendant's inaction merits a significant sentence. A significant term of imprisonment would not result in unwarranted sentencing disparities either among the co-defendants in this case or defendants sentenced for similar crimes.

Section 242 sentences involving officers' failures to intervene or deliberate indifference are driven by the specific facts of each case and do not lead to ready comparisons. That said, in the most similar case to the defendant's, a law enforcement officer stood by and watched while other officers kicked a handcuffed suspect in the head and upper body and punched him in the face, ultimately resulting in the suspect's death. *See United States v. Pagan-Ferrer*, 736 F.3d 573 (1st Cir. 2013). Following convictions at trial for failing to intervene, making false statements, and engaging in obstruction, the officer was sentenced to 360 months' imprisonment. The officer's sentence is appropriately higher than the sentence the Government seeks for the defendant because that officer was the supervisor of the officers who engaged in the excessive force.

Other cases for comparison involve a failure to intervene where the excessive force resulted in bodily injury only; the defendant's sentence should not come close to the shorter sentences in those cases because death resulted here. For example, in related cases *United States v. Broussard*, 882 F.3d 104 (5th Cir. 2018) and *United States v. Hatley*, 717 F. App'x

15

457 (5th Cir. 2018), two corrections officers failed to intervene when other officers beat, kicked, and punched an inmate for about ten minutes. Following guilty pleas, Broussard was sentenced to 54 months' imprisonment, and Hatley was sentenced to 36 months' imprisonment. The Fifth Circuit upheld the sentences, emphasizing in *Broussard* that the officer was criminally liable for the underlying excessive force—in that case, the aggravated assault—and that he was not a minor participant simply because his crime was one of omission. Similarly, in *United States v. Daniels*, 281 F.3d 168 (5th Cir. 2002), an officer who failed to intervene when fellow officers kicked, punched, and struck a restrained inmate in the head, resulting in the inmate's bodily injury, was sentenced to 87 months' imprisonment.

A recent excessive force case in this District is also instructive. In *United States v. Palkowitsch*, -- F.4th --, 2022 WL 2080162 (8th Cir. Jun. 10, 2022), a law enforcement officer was sentenced to 72 months' imprisonment after he was convicted at trial of violating 18 U.S.C. § 242 for kicking a man three times as the man was being bitten and held by a police canine. The man sustained serious injuries.

Because the jury concluded that the defendant's crimes resulted in Mr. Floyd's death, the defendant's sentence should be anywhere near as low as any of these sentences—54, 36, 72, or 87 months of imprisonment—where the crime resulted solely in bodily injury. Considering the Section 3553(a) factors, his conduct is more in line with the *Pagan-Ferrer* case.

## IV. CONCLUSION

WHEREFORE, the United States respectfully asks this Honorable Court to impose a sentence of less than 300 months' imprisonment, and significantly more than the guidelines range applicable to co-defendant Lane.

Dated: June 30, 2022                    Respectfully submitted,

ANDREW M. LUGER                          KRISTEN CLARKE
United States Attorney                   Assistant Attorney General
                                         Civil Rights Division

*/s/ LeeAnn K. Bell*
BY: LEEANN K. BELL                       */s/ Samantha Trepel*
Acting U.S. Attorney                     BY: SAMANTHA TREPEL
Attorney ID No. 0318334                  Special Litigation Counsel
                                         Attorney ID No. 992377 DC