UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.: 21-CR-108 (PAM/TNL)(2)

-----------------------------------------------------------------------

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT THAO'S POSITION** |
| vs. | ) | **WITH RESPECT TO SENTENCING** |
| | ) | |
| TOU THAO, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

-----------------------------------------------------------------------

Tou Thao, by and through counsel, respectfully asks that the Court calculate his advisory Guidelines Range at 24-30 months, or alternatively, grant him a post-*Booker* variance, and impose a sentence of 24 months imprisonment. Such a sentence would be sufficient, but not greater than necessary to achieve the goals outlines in § 3553(a)(2).

## OBJECTIONS TO THE PRESENTENCE REPORT

Mr. Thao objects to several portions of the PSR. Specifically:

**Paragraph 12:**

- Mr. Thao objects to the inclusion of paragraph 12 in that it is not relevant to the offense conduct. Alternatively, Mr. Thao suggests the following edits to paragraph 12.

1. Mr. Thao objects to the inclusion of paragraph 12 in that it does not accurately reflect his training, but instead lumps the training of all co-defendants together. Specifically, it incorporates training that Officers Lane and Kueng received during their academy training, which differs in content from what Mr. Thao recieved. Any training co-defendants received that was not given to Mr. Thao should be eliminated in that it is irrelevant.

2. Mr. Thao objects to training on officers making false statements (first bullet point of paragraph 12) because there were no allegations that Mr. Thao made false statements when he was a police officer.

3. Mr. Thao objects to the inclusion of any reference to neck restraint training in paragraph 12 (the 2nd to 5th bullet points on page 6 of 26) because there was no neck restraint used in the offense at hand. This

change is based upon Mr. Thao's testimony and evidence presented at trial.

4. The second bullet point on page 7 should include the following sentence at the end: **A subject should be rolled into the side-recovery position, when it is safe to do so, per MPD policy/training on excited delirium.** This change is based upon Mr. Thao's testimony and evidence presented at trial.

5. Mr. Thao objects to the third bullet point on page 7 of 26. This bullet point should not be included because Mr. Thao never received training that "whenever a subject is restrained, there is a direct correlation between their ability to breathe and the position their body is in". Counsel refers to Mr. Thao's testimony and training records.

6. Mr. Thao objects to the second to last bullet point of paragraph 12 on page 7 of 26. This bullet point contradicts the training Mr. Thao was given as a police officer during his time in the academy, contradicts training given to him during his time at Fairview Hospital, and experience he had with paramedics. Instead it should read: "**Mr. Thao learned through training and experience that if a person is speaking, they have enough air to breathe**". This change is based upon Mr. Thao's testimony at trial.

7. Mr. Thao requests an amendment to paragraph 12 to include all training he received on Excited Delirium Syndrome ("ExD"), As of now the PSR lacks mention of ExD training Mr. Thao received, which is relevant regarding the decisions he made during the offense. This change is based upon Mr. Thao's testimony at trial.

**Paragraph 13:**

- Mr. Thao objects to the inclusion of this paragraph in whole. This paragraph outlines the prosecution's legal theories and arguments and cites to court cases and the Constitution. These are not appropriate to include in the PSR "Offense Conduct" section.

**Paragraph 14:**

- Mr. Thao objects to the inclusion of the word "allegedly". It was proven at trial that Mr. Floyd did in fact offer a counterfeit US dollar bill at CUP Foods.

- Mr. Thao requests that additional information be added to Paragraph 14 to reflect that the dispatch information included that Mr. Floyd was "under the influence" per the reporting party at CUP Foods. This change is based upon Mr. Thao's testimony and evidence presented at trial.

**Paragraph 16:**

- Mr. Thao requests amendment of the paragraph to reflect testimony and video evidence that Mr. Floyd made furtive movements in the Mercedes vehicle, resisted arrest, and was ingesting narcotics in pill form during the incident. This change is based upon video evidence presented and testimony at trial.

- Mr. Thao requests an amendment of the paragraph to include that Mr. Floyd was under legal arrest and not free to leave.

**Paragraph 18:**

- Mr. Thao requests an amendment of the paragraph to reflect that dispatch informed Mr. Thao that the suspect (George Floyd) was under the influence. This change is based upon evidence presented at trial.

- Mr. Thao requests an amendment of the paragraph to reflect that he knew based off training and experience, and told Officer Chauvin that the block Cup Foods was in was Bloods gang territory. Additionally, Mr. Thao requests that it be included that one of the passengers in the vehicle Mr. Floyd was arrested in was wearing all red – a sign that someone may be involved with the Bloods gang. This change is based upon Mr. Thao's testimony and evidence presented at trial.

- Mr. Thao requests that an amendment to the paragraph be made to read that "Mr. Thao testified that he suspected Mr. Floyd may be suffering from Excited Delirium Syndrome and suggested the Maximal Restraint Technique (MRT) to restrain Mr. Floyd, pursuant to MPD training and policy on Excited Delirium Syndrome." This change is based upon Mr. Thao's testimony at trial.

**Paragraph 19:**

- Mr. Thao suggests that the last sentence be changed to "Thao stood **between the squad car and the sidewalk to ensure control of the growing and angry crowd so that officers and Mr. Floyd were kept safe from them and paramedics could easily administer aid without bystander interference. Mr. Thao also maintained safety of the scene by keeping watch on traffic while Mr. Floyd was restrained."** This change is based upon testimony at trial.

**Paragraph 20:**

- Mr. Thao requests an amendment of the paragraph to included that "**Mr. Thao testified that it was his belief the other three officers were restraining Mr. Floyd because they too thought he was suffering from Excited Delirium. Per MPD training, a suspected Excited Delirium subject is to be held until paramedics arrive to**

6

**sedate and administer aid. MPD trains officers that if a Excited Delirium subject is not restrained they could attack officers, bystanders, or exhaust themselves into cardiac arrest and die**". This change is based upon testimony at trial.

## Paragraph 21:

- Mr. Thao objects to the bolded "defendants" and request that it be changed to **"to Chauvin".** Mr. Thao requests the sentence be edited to "Mr. Floyd made repeated statements regarding his **alleged** inability to breath due to the restraints". It is Mr. Thao's position that it is important to remove "neck" in "neck restraint" because Dr. Baker testified that there was no medical evidence to suggest that Mr. Floyd's inability to breathe was due to compression of the neck.

## Paragraph 22:

- Mr. Thao objects to the first sentence as contrary to trial testimony. Instead he requests the sentence read "At 8:20 p.m., Mr. Floyd **continued to resist arrest…."**

- Mr. Thao requests that the following sentence be added after the quote "we'll just hold him until EMS": "**Mr. Thao was specifically taught by MPD that it is policy to hold a person suspected of having Excited Delirium in a restraint until EMS arrives and can**

7

**administer sedation and/or aid".** This change is based upon Mr. Thao's testimony at trial.

- Mr. Thao incorporates Mr. Kueng's objection to paragraph 22 in that the portion regarding "No, just leave him" should reflect the testimony and body worn camera footage shown in trial to read as: "**Lane asked, "Should we get his legs up or is this good?" Chauvin responded, "No, just leave him." and Kueng repeated Mr. Chauvin's statement by stating, "just leave him" for Lane's benefit."** This change is based upon Mr. Thao's testimony at trial.

## Paragraph 24:

- Mr. Thao objects to the paragraph as is and requests the last two sentences read instead as: "The bystanders made repeated statements (**removed "to the defendants"**) regarding concerns about the **perceived** unreasonable force due to Mr. Floyd's lack of resistance, the (**"neck" removed)** restraint employed by Chauvin; **and** Mr. Floyd's inability to breath due to the manner of the restraint**. (removed last phrase)** Chauvin, Thao, and Kueng each made statements to the effect that Mr. Floyd must be able to breathe if he is able to speak, **per their training at MPD. Chauvin, Lane, and Kueng continued to restrain Mr. Floyd. Mr. Thao testified that it**

**was his belief that this was in line with the MPD Excited Delirium training."**

**Paragraph 25:**

- Mr. Thao incorporates Mr. Kueng's objection and amendments to Paragraph 25.

- Mr. Thao requests the following sentence be added: **This was consistent with MPD training and protocols regarding excited delirium.**

**Paragraph 26:**

- Mr. Thao objects to the second bolded **"the defendants"**, instead it should be replaced with "Chauvin" because only Chauvin was performing a restraint visible to bystanders. This change is based upon Mr. Thao's testimony and evidence presented at trial.

- Mr. Thao objects to the second to last sentence's portion reading "reposition Mr. Floyd without Chauvin's knee obstructing his ability to breathe". Mr. Thao requests that this be removed or rephrased as "reposition Mr. Floyd without Chauvin's **knee restraint"** because there was no medical evidence that Chauvin's knee on Mr. Floyd's neck prevented breathing. This change is based upon testimony and evidence presented at trial.

**Paragraph 27:**

- Mr. Thao objects to the first bolded "**the defendants**". Instead he believes it should accurately read "Chauvin, Kueng, and Lane" because Mr. Thao did not perform a restraint.

- Mr. Thao objects to any mention of Genevieve Hanson as an off-duty firefighter. Her job is irrelevant because she was not on-duty. Instead, where appropriate, it may be accurate to list that she is only trained in CPR, but has no further medical training, MPD police training, or training on excited delirium.

- Mr. Thao objects to the final sentence regarding Kueng's pulse checks because Mr. Thao did not observe or hear this, thus is should not be included in his offense conduct. This change is based upon Mr. Thao's testimony at trial.

**Paragraph 28:**

- Mr. Thao objects to inclusion of Genevieve Hanson's occupation as irrelevant.

- Mr. Thao objects to the inclusion of the sentence "Kueng checked Mr. Floyd's wrist a second time for a pulse, and Kueng said 'Can't find one'" because it is irrelevant as Mr. Thao did not observe or hear this. This change is based upon Mr. Thao's testimony at trial.

- Mr. Thao request the following information be added regarding not allowing an off-duty firefighter on scene to assist: **It should be noted that MFD employees have no training on excited delirium.** This change is based upon testimony at trial.

**Paragraph 29:**

- Mr. Thao requested the following addition at the end of the paragraph: **"A paramedic testified that he anticipated that Mr. Floyd was potentially in excited delirium based upon the information he was provided prior to arriving on scene."** This change is based upon testimony at trial.

**Paragraph 30:**

- Mr. Thao objects to Genevieve Hanson's job as irrelevant.

- Mr. Thao objects to statements made by Genevieve Hanson as irrelevant in this paragraph and requests the quote from her be removed.

**Paragraph 31:**

- Mr. Thao objects to the final sentence and requests it be edited as: "Thao stood between the squad car and the crowd and looked **back at the scene at different times during the restraint. Mr. Thao testified that he positioned himself in this manner to control the**

**angry crowd from interfering with scene safety and medical aid
and ensure the safety of the involved officers and Mr. Floyd."**

## Paragraph 32:

- Mr. Thao request that "agreed" be changed to **volunteered** regarding
  Mr. Lane's involvement doing CPR in the ambulance. This change is
  based upon testimony at trial.

## Paragraph 33:

- Mr. Thao objects to the bolded "the defendants" and request that it
  should read **Chauvin**, or alternatively **Chauvin, Kueng, and Lane.**
  This change is based upon Mr. Thao's testimony and evidence
  presented at trial.

- Mr. Thao objects to the sentence regarding Lane's disclosure because
  it is irrelevant to Mr. Thao's offense conduct.

## Paragraph 34:

- Mr. Thao objects to the quotation "full arrest" and refers back to his
  body worn camera exhibit(s) for a more accurate statement.

- Mr. Thao objects to the final sentence regarding whether he did not
  reference the report of Mr. Floyd. MFD was aware of the same
  dispatch information given to Mr. Thao about Mr. Floyd's condition
  as all MFD vehicles have dispatch logs updating on their computers.

Instead, Mr. Thao requests the sentence read: "Thao relayed the information to MFD that they were needed at 36th and Park**."** This change is based upon Mr. Thao's testimony at trial.

- Mr. Thao request the following sentence be added at the end of the paragraph: **MFD disregarded Thao's information and instead went into Cup Foods in an attempt to locate Mr. Floyd, further delaying their ability to render medical assistance.** This change is based upon testimony and evidence presented at trial.

**Paragraph 36:**

- Mr. Thao objects to the bolded **defendants** and request that it list the other officers without him, as he was not interviewed. Mr. Thao refers to trial exhibits showing him walking away before the interview was conducted.

**Paragraph 37:**

- Mr. Thao request the following phrase be removed as irrelevant to his conduct: "After **the defendants'** statements to the Sergeant". This is because Mr. Thao was never interviewed by a sergeant on scene.

**Paragraph 38:**

- Mr. Thao objects to the entire paragraph because he was not interviewed and thus the information is irrelevant to his offense conduct.

**Paragraphs 39, 40, 41:**

- Mr. Thao objects to the inclusion of these paragraphs because they outline the prosecution's theory of the case and include information not available to Mr. Thao during the offense. Additionally, they are irrelevant to the offense conduct in that they are overbroad and depict Mr. Thao as a restrainer of Mr. Floyd when the evidence demonstrates that Mr. Thao never once touched Mr. Floyd.

**Paragraph 42:**

- Mr. Thao objects to the inclusion of <u>Count 1</u> because he was not charged or convicted of that offense.

- In <u>Count 2</u>, Mr. Thao requests that the following sentences be removed because they are irrelevant to his personal offense conduct: "Kueng additionally observed that Mr. Floyd had no detectable pulse. However, they did not do or say anything to intervene to attempt to stop Chauvin's restraint".

- In <u>Count 2</u>, Mr. Thao requests the following sentences be added to the paragraph:

  o **Mr. Floyd complained of inability to breathe while being removed from the squad car and prior to the restraint on the ground.**

  o **Mr. Thao testified that he was trained the MPD policy was to restrain a person suspected of excited delirium until medical assistance arrives to take over control.**

- In <u>Count 2,</u> at the end of the sentence ending "…failed to intervene or take reasonable steps to do so", Mr. Thao would like added "… steps to do so, **following their MPD training/protocols on excited delirium."** This change is based upon Mr. Thao's testimony at trial.

- In <u>Count 2,</u> Mr. Thao objects to the following sentence and ask it be removed: "Thao and Kueng were aware from their MPD policy education and training that they had a duty to intervene to stop, or attempt to stop, Chauvin's unreasonable force".

- In <u>Count 2,</u> Mr. Thao objects to the sentence beginning "Thao and Kueng observed and heard that Mr. Floyd…" and asks that his name be removed in this sentence to reflect trial testimony and exhibits.

- In <u>Count 3,</u> Mr. Thao asks that the first three bolded **defendants** be changed to **Chauvin, Kueng, and Lane** to reflect his lack of involvement with the restraint.

- In <u>Count 3,</u> Mr. Thao request that the following sentence be added: **Mr. Thao called for EMS and stepped up the response from a Code 2 to a Code 3.** This change is based upon Mr. Thao's testimony at trial.

- In <u>Count 3,</u> Mr. Thao objects to the inclusion of Genevieve Hanson's occupation because it is irrelevant.

- In <u>Count 3,</u> at the bottom of page 13, Mr. Thao objects to the sentence reading in part "… but **the defendants** never took actual measures…" because he called EMS and upgraded to a Code 3. Instead, he requests that this be changed to **the other three defendants** or **Chauvin, Kueng, and Lane.** This change is based upon Mr. Thao's testimony at trial.

- At the bottom of page 13 of 35 in <u>Count 3,</u> Mr. Thao asks the following information be added: **MPD policy does not allow for officers to allow bystanders to engage in medical attention or assistance at the scene.** This change is based upon Mr. Thao's testimony and evidence presented at trial.

- Mr. Thao objects to the first **the defendants** at the top of page 14. Instead it should read **the other three defendants.** This change is based upon Mr. Thao's testimony at trial.

**Paragraph 45:**

- Mr. Thao takes objection to the notion that he gave inconsistent or contradictory testimony while under oath. Mr. Thao requests the removal of the first sentence and leave the second one standing after "Nevertheless" is removed.

**Paragraph 46:**

- Mr. Thao asks that the word "conversely" be removed.

- Mr. Thao requests that "and the scene is safe" be bolded in the second to last line. This change is based upon Mr. Thao's testimony at trial.

**Paragraph 47:**

- Mr. Thao requests the first sentence be rewritten as "Thao's testimony **was that he was** not aware that Mr. Floyd had a serious medical need."

- Mr. Thao requests that the word "conversely" be removed.

- Mr. Thao request that the sentence at the bottom of page 14 and continuing on to page 15 be rewritten as "Thao **testified that** he believed that Mr. Floyd had eaten drugs, **heard Mr. Floyd say he**

**"ate too many drugs",** and was suffering from excited delirium:". This change is based upon Mr. Thao's testimony at trial.

- Mr. Thao requests the following sentence be added: **Mr. Thao testified that he was trained by MPD to restrain someone suspected of excited delirium until medical personnel arrive to sedate and save their live by preventing a cardiac arrest.**

**Paragraph 56:**

- As indicated *supra,* Mr. Thao request that he receive a 4 or 3 level decrease for a mitigated role under US.S.G. §3B1.2.

**Paragraph 106:**

- Mr. Thao requests that the age of employment be 14-20, reflecting his testimony.

## GUIDELINES CALCULATIONS

Pursuant to statute, the sentencing court is required to consider all the factors listed under 18 U.S.C. § 3553(a) in determining an appropriate sentence. The primary directive in § 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a):

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense:

18

(B) To afford adequate deterrence to criminal conduct;

(C) To protect the public from further crimes of the defendant; and

(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, 18 U.S.C. § 3553(a) further directs sentencing courts to consider the following factors:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;

2. The kinds of sentences available;

3. The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

4. The need to provide restitution to any victims of the offense.

As recognized in *Kimbrough v. United States,* 128 S.Ct. 558 (2007), a sentencing judge need not always accept the policy judgments implicit in the Guidelines. The Court must examine other factors to create a sentence that reflects the seriousness of the offense, promote respect for the law, and to provide a just punishment. While the Guidelines range may serve as a starting point and initial benchmark, the sentencing court may not presume

that the Guidelines range is reasonable and must make an individualized assessment as to the appropriate sentence based on all the relevant facts presented. *Gall v. United States,* 129 S.Ct. 586 (2007). A variance from the Guidelines based on a policy or "categorical" disagreement with the guidelines where the guidelines in question "do not exemplify the [Sentencing] Commission's exercise of its characteristic institutional role," are entitled to as much "respect" as traditional "outside the heartland departure." *Spears v. United States,* 555 U.S. 261, 264 (2009). The sentencing court's focus, therefore, is not whether to impose a Guidelines sentence or to vary from the Guidelines. Instead, the linchpin of the sentencing determination process involves a focus on the "overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to achieve the goals of sentencing." *Kimbrough,* 128 S.Ct. at 570.

## I. Involuntary Manslaughter is the appropriate base offense (§2A1.4)

Mr. Thao incorporates the arguments made by his codefendant's – Mr. Kueng – counsel regarding the application of Involuntary Manslaughter as the base offense instead of Second Degree Murder.

20

The PSR inappropriately applies U.S.S.G. §2A1.2. Second Degree Murder resulting in an applicable Base Level Offense of 38. Mr. Thao objects to the application of §2A1.2 based on the facts adduced at trial. Instead, Section §2A1.4 (Involuntary Manslaughter) should be applied under the facts of the case.

This adjustment changes the base level offense to 18 and should be corrected in paragraph 53. Using the second degree murder guideline (§2A1.2) as the base offense level is incompatible with the calculation for Deprivation of Rights Under Color of Law used in paragraph 59. The fact that Mr. Thao's single course of conduct resulted in a conviction for both counts does not rationally support using two different offense guidelines under Section 2H1.1(a) ("the offense level from the offense guideline applicable to any underlying offense"). The rule of lenity, inter alia, requires application of the involuntary manslaughter guideline, not the second degree murder guideline.

## II. Color of Law Adjustment is inappropriate to apply to a police officer acting under the color of law (§2H1.1(b)(1)(B))

Mr. Thao incorporates the arguments made by his codefendant's – Mr. Kueng – counsel, who argued that a Color of Law Adjustment is inappropriate to apply to police officers who commit 18 U.S.C. § 242 violations because it is illogical and duplicative.

The six-level adjustment should not apply. Adding six levels for a public official is duplicative of the charges of conviction and amounts to double counting. According to Section 2H1.1(b)(1) a six-level increase applies if the defendant was a public official or the offense was committed under color of law. In other words, every violation of Title 18 U.S.C. § 242 would qualify for a six-level increase which clearly was not the intent of Guidelines.Section 2H1.1, titled Offenses Involving Individual Rights, applies to offenses other than convictions under Section 242 of Title 18. Hence, the only logical interpretation of the Section 2H1.1(b)(1) enhancement is that it may come into play for an offense committed under a statute other than 18 U.S.C. § 242 (e.gs, 18 U.S.C. §§ 246, 247, 249, 1091).

The Guidelines Commission must not have intended an absurd result or double counting. The six levels increase under Section 2H1.1(b)(1) for a violation of 18 U.S.C. § 242 is superfluous and does not apply.

### III.   Mitigated Role Adjustment (§3B1.2)

The presentence investigation report does not address a mitigated role adjustment pursuant to U.S.S.G. §3B1.2.  Mr. Thao objects to this omission and requests that a 4 (or at least a 3 level) reduction for mitigated role be applied. See U.S.S.G. § 3B1.2.

Mr. Thao was substantially less culpable than the principal actor, Derek Chauvin, and the other codefendants. While accepting the jury verdict, Mr. Thao has a very different and distinct role than the others, who were involved in the restraint of Mr. Floyd. Although obvious, it must be noted that at no time during the entire encounter did Mr. Thao physically touch Mr. Floyd, and in no way was involved in the restraint. As such, Mr. Thao was not in a position to be able to monitor the pulse or breathing of Mr. Floyd, or to determine whether CPR or additional medical intervention was received.

## IV.   Advisory Guidelines

Using a base level of 18, the victim related adjustment (+2), with a reduction for a minimal participant (-4), the adjusted offense should be a level **16.** If a 3 level reduction is factored into the calculation, the adjusted offense level should be 17. Based on a total offense level of 16 the guidelines should read 21-27 months. Alternatively, if the total offense level is 17, the guidelines should be 24-30 months.

## SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

**I. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

Collateral consequences of a conviction may be considered by the court in determining a fair sentence. *See United States v. Pauley,* 511 F.3d 474-74 (4th Cir. 2007); *United States v. Nesbeth,* 118 F.Supp.3d 179, 180 (E.D.N.Y. 2016).

Mr. Thao has already been seriously punished for his conduct on May 25, 2020. His name is now infamous throughout Minnesota, the United States, and the world as someone who stood by and watched Derek Chauvin murder someone in the streets of Minneapolis. Mr. Thao's face was plastered across local and national newscasts, newspapers, and made into viral photo posts and memes.

**II. To afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant**

A criminal sentence needs to "afford adequate deterrent to criminal conduct.". § 3553(a)(2)(B). Mr. Thao will no longer be able to serve as a licensed peace officer, and all future employment opportunities will be limited by his felony conviction. There is no practical way Mr. Thao may commit an offense under 18 U.S.C. § 242 because he will never again be in

a position to act under a color of law. There is no danger or anyone being hurt by Mr. Thao as a police officer because he is barred from becoming one, forever.

Criminal sentences should take specific deterrence for the particular defendant, and general deterrence for potential future criminals. *See United States v. Peterson,* 887 F.3d 343, 349 (8th Cir. 2018). The need for specific deterrence has already been met. Mr. Thao has turned his life around to be religious and one full of peace. Mr. Thao had a clean record before this offense, and but for this specific event, he likely will never again be charged with a crime. Mr. Thao has been punished via public opinion and will likely never stop being vilified by the public after he reenters society after prison. Adding more time to Mr. Thao's sentence does nothing to further deter him from actions he already will never make again.

General deterrence to prevent others from committing the same actions as Mr. Thao has already occurred – evidenced by the droves of persons who left the Minneapolis Police Department and other police departments in Minnesota and nationwide. Sentencing Mr. Thao more harshly than reasonably necessary to deter him, would not add in deterring future officers. Changes to Minneapolis Police Department policy, the multiple multi-million dollar settlements Minnesotan cities have paid for

police-killings, and the Executive Order to "Advance Effective, Accountable Policing and Strengthen Public Safety"[1] President Joe Biden signed on the second year anniversary of George Floyd's death have provided plenty of general deterrence for any police officers who may become potential criminals in the duration of their career.  A powerful message has already been sent to police officers across the nation that if a man dies as a result of your actions or inactions, you will be punished.

## III.    The Nature and Circumstances of the Offense

The death of Mr. Floyd and the circumstances of the incident leading to his death are extraordinarily tragic; first, on a personal level to the family and friends of Mr. Floyd, as well as to the historical significance of the movement regarding racial justice and policing which arose as a result. In no way is Mr. Thao attempting to minimize the death of Mr. Floyd, or his own behavior and conduct.

However, the required legal analysis for the sentencing framework requires proper review to differentiate and compare Mr. Thao's actions from those of the primary actor, Derek Chauvin.

---

[1] Press Release, Briefing Room The White House, FACT SHEET: President Biden to Sign Historic Executive Order to Advance Effective Accountable Policing and Strengthen Public Safety (May 25, 2022) (https://www.whitehouse.gov/briefing-room/statements-releases/2022/05/25/fact-sheet-president-biden-to-sign-historic-executive-order-to-advance-effective-accountable-policing-and-strengthen-public-safety/)

Following the incident, Mr. Thao cooperated completely with the criminal investigation and legal process. Mr. Thao cooperated with the involved-officer protocols in all aspects, including taking pictures, turning over his uniform and handgun, and communicating with the BCA/FBI investigation. Mr. Thao voluntarily met with law enforcement to give a lengthy voluntary statement regarding the incident. Mr. Thao voluntarily surrendered to law enforcement on two occasions when required to do so. He cooperated with all conditions of his pretrial release, he appeared as ordered to all court hearings, and he cooperated with the presentence investigative process in all respects.

Mr. Thao has refrained from giving any public statements regarding this case, and has remained law abiding in all aspects following his indictment.

Moreover, Mr. Thao's role in this case was very different from Mr. Chauvin, as well as the other defendants, and to paint him and his actions with the same brush is inappropriate. In this case the jury determined that the actions of the responding officers, and Mr. Chauvin, caused the tragic death of Mr. Floyd. In no way is Mr. Thao disputing the verdict as found by the jury in this case.

However, the actions and conduct of Mr. Thao must be viewed in the context of the information he possessed as the incident unfolded, and not with the benefit of 20/20 hindsight. It must be noted that Mr. Thao and his codefendants, along with the responding paramedics, all suspected that Mr. Floyd was exhibiting signs of Excited Delirium, and these suspicions (based on Mr. Thao's training and experience) guided his decision making. Mr. Thao is in no way arguing that this was the cause of Mr. Floyd's death, but it must be taken into context in analyzing his decisions and actions. Moreover, Mr. Thao arrived on the scene when Officers Lane and Kueng had already placed Mr. Floyd under arrest and were attempting to place him in a police vehicle. Mr. Thao was the officer who suggested that Mr. Floyd be placed in a hobble restraint and located a device in the vehicle. However, upon learning that medical personnel had already been requested, Officer Chauvin decided to keep Mr. Floyd restrained until medical personnel arrived due to the suspicions of Excited Delirium (which is consistent with MPD policy on Excited Delirium). Mr. Thao was the officer inquired about the status of the medical personnel request, and upgraded it to a Code 3 (lights/sirens).

Civil rights violations are serious offenses, and this is reflected in the sentencing guidelines established by the Commission. As such, any sentence

within the Guidelines Range reflects the seriousness of the offense and is considered to be appropriate.

## IV.   The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

A guidelines sentence of 24 months would avoid an unwarranted sentencing disparity among the codefendants in this case. Mr. Chauvin, the primary actor in the restraint and command structure, will likely receive a sentence between 20-25 years for this case as well as an unrelated crime committed as a police officer in 2017. Mr. Thao as no previous criminal history, and was only convicted for his actions in a single incident.

Moreover, his decisions and actions were made in reliance on the training he received, which was fully vetted during the course of his trial. Notably, since that time this training has been determined to be seriously flawed by a Minnesota Department of Human Rights Report Commission following this incident.[2] Flawed as Mr. Thao's decisions and actions were – as found to be by the jury – his training still provides context to view his conduct.

---

[2] Findings, Minnesota Department of Human Rights: Investigation into the City of Minneapolis and Minneapolis Police Department (April 27, 2022) (https://mn.gov/mdhr/assets/Investigation%20into%20the%20City%20of%20Minneapolis%20and%20the%20Minneapolis%20Police%20Department_tcm1061-526417.pdf )

Mr. Thao was not the main actor in this incident. He abided by and relied upon training that we now know through a Department of Human Rights probe was *highly* flawed. Mr. Thao was doing his job the way he was taught to do it. Mr. Thao never touched George Floyd  never held him down, and he called for medical services.

Mr. Thao urges the Court to use common sense in applying his sentence at the lower end of the guidelines instead of the higher end, which is logically reserved for more egregious actions/actors such as Derek Chauvin.

## V.     The Need to Provide Restitution to any victims of the offense

This factor is not applicable to Mr. Thao.

## VI.     Personal History

Mr. Thao parents were Hmong refugees from Laos who came to the United States in the aftermath of the Vietnam War. Mr. Thao was the third of seven children, and had a very difficult upbringing on a number of levels. Mr. Thao's early childhood was spent in North Minneapolis, and although his father worked regularly, his family struggled financially. Mr. Thao recalled that most days his family only had enough food for one meal. Mr. Thao and his siblings had few clothes, and would share with each other,

allowing them to wear different clothes to school. At school, Mr. Thao and his siblings were subjected to ethnic prejudice and bullying, and Mr. Thao and his siblings were only allowed to play in their yard to avoid physical abuse due to their ethnicity.

At the age of 10, Mr. Thao's family relocated to Fridley, partly to escape the crime and prejudice they experienced in North Minneapolis, in part to avoid Mr. Thao and his siblings from being recruited into street gangs as some of his male cousins had been. This resulted in a different mode of discrimination and bullying, as Mr. Thao's family was one of the first Hmong families in the city and in his schools.

Additionally, Mr. Thao's upbringing was fraught with domestic violence and physical discipline/abuse. Mr. Thao's father was the unquestioned leader of the household and was quick to anger, which often resulted in domestic abuse to various members of the family. Indeed, a scar on Mr. Thao's head is a permanent reminder of the abuse he suffered at the hands of his father, beginning at a young age.

In a cruel irony, this abuse led Mr. Thao to become a police officer. On one occasion Mr. Thao and his brother got into a physical roughhousing match which led to his father beating both of them and ultimately whipping them with an extension cord. When his mother intervened, she too was

whipped with an extension cord. Unrelenting, Mr. Thao's father went to his bedroom, retrieved a loaded handgun, and pointed it at their heads threatening to kill all of them. Eventually, his father returned back to the bedroom, and the rest of the family fled to a relative's home where the Minneapolis Police were called. Mr. Thao, still a young child, was chosen to return to the family's home with the police to assist in the identification and arrest of his father. Mr. Thao recalls the two days his father was in jail as the most peaceful days of his childhood.

On the first day he could legally work – his fourteenth birthday – Mr. Thao began working at a local restaurant to help support his family financially. Mr. Thao continued to work when not in school and on weekends until his high school graduation.

Shortly thereafter, Mr. Thao's parents and a majority of his siblings moved to a different state seeking better employment, leaving Mr. Thao and his brother behind. Mr. Thao enrolled in college the following fall, dropping out after one semester of poor academic performance. It must be noted that Mr. Thao worked the summer before and through the first failed semester of college.

Failing out of college caused Mr. Thao to reflect and refocus on his own goals in life. He decided to become a police officer based in part on the

earlier experience with the Minneapolis Police. To that end, he reenrolled in college, rededicated himself as a student, and became a community service officer with the MPD. Ultimately, he completed the MPD academy, graduated from college, and in 2009 became a sworn police officer. Unfortunately, the Great Recession hit and Mr. Thao, along with his entire academy class, was let go. Instead of leaving for another police agency, Mr. Thao worked security jobs until MPD obtained enough resources to rehire his academy class again in 2012.

Eventually, he married his childhood sweetheart and started a family. Family is very important to Mr. Thao, as he shares his home with his wife, children, and with his extended family. During the trial, there was not a single day that passed without his wife and one of his siblings in the gallery. But for him only being allowed two guests per day at the trial due to COVID-19 protocols, there is no doubt that the gallery would have been full of family members, friends, and former co-workers supporting Mr. Thao.

When Mr. Thao was arrested for this case, he was held in solitary confinement. He had serious thoughts of committing suicide and began making a plan. One day he received a letter from a supporter who recommended that Mr. Thao read The Book of Job and relate it to what he was going through. Mr. Thao then read the book and prayed and decided to

end his life. In a remarkable coincidence, a deputy came into his cell to speak with him, indicating he wanted to discuss The Book of Job. As a result of this, Mr. Thao reinvested himself in his faith. This transformation was notable, as indicated by his wife telling him she thought the jail released the wrong man because he was a totally different person upon returning home.

## <u>CONCLUSION</u>

Mr. Thao believes that the appropriate calculated Guidelines Range for him is 24-30 months. Mr. Thao respectfully requests this Court impose a sentence of 24 months imprisonment. This sentence would be sufficient, but not greater than necessary to achieve the goals outlines in § 3553.

Respectfully submitted,

Dated: This 30th day of June, 2022  /s/ Robert M. Paule
           Robert M. Paule (#203877)
           Robert M. Paule, P.A.
           920 Second Avenue South
           Suite 975
           Minneapolis, MN 55402
           T: (612) 332-1733
           F: (612) 332-9951

           Natalie R. Paule (#0401590)
           Paule Law P.L.L.C.
           101 East Fifth Street
           Suite 1500
           St. Paul, MN 55101
           T: (612) 440-3404
           nrp@paulelaw.com

           Attorneys for Tou Thao